Docket No. 101718.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

RICHARD G. KRAUTSACK, Appellee, v. DAVID ANDERSON *et al.*, Appellants.

*Opinion filed December 21, 2006.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, and Garman concurred in the judgment and opinion.

Justice Karmeier dissented, with opinion.

Justice Burke took no part in the decision.

## OPINION

Plaintiff, Richard G. Krautsack, brought an action in the circuit court of Cook County against defendants, Luxury Adventures, Ltd. (Luxury), a California corporation, and David Anderson, Luxury's president and sole shareholder, for breach of contract and violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act or Act) (815 ILCS 505/1 *et seq.* (West 2004)). Defendants prevailed at trial and subsequently filed a petition seeking attorney fees and costs pursuant to section 10a(c) of the Act (815 ILCS 505/10a(c) (West 2004)) and Supreme Court Rule 137 (155 Ill.

2d R. 137). The trial court granted plaintiff's motion to strike defendants' fee petition. Both parties appealed. The appellate court affirmed the trial court's judgment in favor of defendants on plaintiff's complaint, and affirmed the trial court's order striking defendants' fee petition. No. 1–04–2135 (unpublished order under Supreme Court Rule 23) (*Krautsack II*). We allowed defendants' petition for leave to appeal and now affirm the judgment of the appellate court.

## BACKGROUND

On January 9, 1998, plaintiff and three family members embarked on a two-week, $38,000 safari to East Africa arranged by Luxury. Although the trip was scheduled during what would ordinarily be the dry season, plaintiff's safari experience was marred by heavy rainfall reportedly due to the phenomenon known as "El Nino." Upon return from East Africa, plaintiff contacted Anderson and requested a cash refund, which Anderson declined. The parties were unable to resolve their dispute and on September 1, 1998, plaintiff filed suit against Anderson, seeking a full refund, attorney fees and costs, and punitive damages. Plaintiff later amended the complaint to add Luxury as a defendant.

Count I of the amended complaint alleged a violation of the Consumer Fraud Act by Anderson. Plaintiff alleged that shortly before leaving on safari, he obtained information that the countries on the tour were experiencing heavy rainfall. Plaintiff contacted Luxury and "was assured by Anderson that the information he had received was incorrect and that the tour would neither be disrupted nor made more difficult because of the rain." Plaintiff claimed these representations were false and were made in an effort to convince plaintiff not to postpone the tour. Count II of the amended complaint alleged that Luxury, as Anderson's employer, was liable for his fraudulent conduct under the doctrine of *respondeat superior*. Finally, count III of the amended complaint alleged that Luxury breached its contract with plaintiff "because certain of the designated tour sites could not be visited, and certain other sites could only be reached with great difficulty."

Defendants moved for summary judgment. Briefly, defendants argued that Anderson's statements regarding the weather in Africa

were not actionable under the Consumer Fraud Act, but even if those statements were deceptive, they did not proximately cause plaintiff any injury. According to defendants, the statements were made shortly before the planned departure date and, under the parties' contract, plaintiff could not have cancelled the safari without forfeiting the entire cost of the trip. Defendants also argued that plaintiff signed a contract clearly stating that Luxury was not liable for acts of God or the weather. Finally, defendants claimed entitlement to a reasonable attorney fee under section 10a(c) of the Act.

In response, plaintiff argued that material issues of fact regarding the communications between the parties, the cancellation and refund provisions of the parties' contract, and other relevant matters precluded summary judgment. Plaintiff also refined his theory of recovery under the Consumer Fraud Act. Although plaintiff still maintained that defendant Anderson deceived plaintiff when he stated that the weather in Africa would not adversely affect the safari, plaintiff now argued that, based on the record generated in discovery, Anderson had a financial motive for deceiving him and acted out of "greed and avarice." According to plaintiff:

> "When [plaintiff] asked for Anderson's recommendation, Anderson found himself in a bind because Anderson had already paid his African suppliers in advance for [plaintiff's] trip, and if [plaintiff] postponed, Anderson would lose all of that money. *** [I]nstead of being truthful with [plaintiff], Anderson lied to him, recommended to plaintiff that he leave for Africa on January 9, but not revealing that the reason for his recommendation was that he did not want to lose money.

> \* \* \*

> Anderson's misrepresentation to [plaintiff] and his withholding from [plaintiff] the true basis of his recommendation, is actionable because [plaintiff] would clearly have acted differently had he known the truth, instead of being deceived by Anderson."

The trial court granted defendants summary judgment on all three counts of the amended complaint. With respect to the consumer fraud counts, the trial court stated in relevant part:

"Although [d]efendants' actions may have been motivated by self interest, as they had already forwarded certain non-refundable sums to their African suppliers, [d]efendants cannot predict the weather in such a harsh tropical environment. Defendants are clear that their representations about the weather and its effects on their clients' transportation were based purely on their personal experiences as well as those of their contacts in the region. There is no possible way that these statements could be viewed as fraudulent and deceptive. It would be against public policy to hold one liable for acts of God. The choice was left to [p]laintiff to cancel the trip–he chose not to. Therefore, the Court finds that there is no question of fact that [d]efendants did not engage in any deceptive act or practice in this case."

With respect to the contract count, the trial court ruled that no evidence was introduced that Luxury had a contractual duty to recommend that plaintiff postpone his trip, and the evidence that was presented indicated that Luxury satisfied all of its contractual obligations. The trial court also noted that damages did not result directly from Luxury's action, but were the direct result of inclement weather, "something obviously outside of Luxury's control." The trial court concluded: "The facts are clear that Luxury used its best efforts to book a trip for [p]laintiff during the dry season and there have been no facts presented by [p]laintiff to contradict this."

Defendants thereafter filed an amended petition for attorney fees under section 10a(c) of the Consumer Fraud Act. Section 10a(c) states that a court "may award *** reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c) (West 2004). Defendants also filed a motion for Rule 137 sanctions, arguing that no basis in fact or law existed to support plaintiff's claims. See 155 Ill. 2d R. 137. The trial court granted the fee petition and the sanctions motion, assessing fees of $10,499 and costs of $104. Plaintiff appealed.

On appeal, plaintiff further refined his theory of recovery under the Consumer Fraud Act, arguing that the relationship between plaintiff and defendants was that of principal and agent, and that the relationship was a fiduciary one. Plaintiff claimed Anderson had a

conflict of interest when he advised plaintiff to continue with his travel plans. Plaintiff explained:

> "The source of the conflict was that any recommendation that Anderson could make to [plaintiff] could not have benefitted both of their respective financial interests. If Anderson advised [plaintiff] to postpone his travel plans, then Anderson would lose a substantial amount of money. If, on the other hand, Anderson advised [plaintiff] to continue with his travel plans, then [plaintiff] would travel to Africa during a period of torrential rainfall.

> Faced with this conflict, Anderson was obligated, as [plaintiff's] agent, and consistent with his fiduciary duty, to subordinate his personal interests to [plaintiff's] interests and to advise [plaintiff] without bias. Alternatively, if Anderson was unwilling to subordinate his personal interest, as was the case, then Anderson was required to fully disclose this interest to [plaintiff]."

Plaintiff also argued on appeal that the record contained substantial evidence supporting his consumer fraud claim that precluded summary judgment. In particular, plaintiff cited a March 1998 e-mail from Anderson to one of the African tour operators in which Anderson states that plaintiff "did not get what he paid for," and that Anderson "was protecting a lot of asses when [he] 'pushed' [plaintiff] to continue with his travel plans."

As to the contract count, plaintiff argued, *inter alia*, that an issue of disputed fact existed as to whether Luxury could fulfill its contractual obligations to arrange for a safari in the dry season where the dry season was so plagued by rainfall that the safari was made almost impossible to conduct. As to proximate causation, plaintiff argued that his damages were the direct result of Luxury's failure to reschedule the safari and not an act of God.

The appellate court reversed the grant of summary judgment. *Krautsack v. Anderson*, 329 Ill. App. 3d 666 (2002) (*Krautsack I*). As to the consumer fraud count, the appellate court noted that "[w]hile the failure to disclose or concealment of material information by a travel agent, based on the agent's fiduciary duty to his clients, is a novel and uncommon theory, it is not, however, unheard of."

*Krautsack I*, 329 Ill. App. 3d at 677. Reviewing case law from this jurisdiction and other jurisdictions relative to a travel agent's duties, the appellate court concluded that "if an agent has a conflict of interest or some interest that would be adverse to the client or affect the client's decision, the agent must disclose that fact to the client." *Krautsack I*, 329 Ill. App. 3d at 679. The appellate court held that genuine issues of material fact existed as to whether Anderson failed to disclose information material to the object of the parties' agency. Thus, summary judgment on the consumer fraud claim was improper. *Krautsack I*, 329 Ill. App. 3d at 679. The appellate court also held that material issues of fact existed as to the terms of the contract between the parties, and that the March 1989 e-mail was sufficient evidence of a breach to allow the contract claim to proceed to trial. *Krautsack I*, 329 Ill. App. 3d at 682.

As to the trial court's grant of attorney fees and costs under Rule 137, the appellate court concluded that because plaintiff's causes of action survived summary judgment, Rule 137 sanctions were not warranted. *Krautsack I*, 329 Ill. App. 3d at 684. In other words, no basis existed for concluding that plaintiff ran afoul of the rule's requirement that pleadings, motions and other papers must be well grounded in fact and law and not interposed for an improper purpose. 155 Ill. 2d R. 137.

Finally, the appellate court addressed the trial court's grant of fees and costs to defendants under section 10a(c) of the Consumer Fraud Act. Because the appellate court reversed the grant of summary judgment in favor of defendants, defendants were no longer the prevailing parties for purposes of section 10a(c), and thus were not eligible for an award of fees. Although the appellate court could have reversed the fee award on this basis, the court chose to address plaintiff's argument that the award of fees was improper because the record failed to disclose bad faith on his part. Relying principally on *Casey v. Jerry Yusim Nissan, Inc.*, 296 Ill. App. 3d 102 (1998), the appellate court held that an award of statutory fees must be supported by a finding that the plaintiff acted in bad faith, and that Rule 137 provided the proper standard for bad faith. If the trial court finds bad faith under this standard, the court can then consider other relevant factors. *Krautsack I*, 329 Ill. App. 3d at 685.

The appellate court inferred, based on the trial court's award of Rule 137 sanctions, that it had found bad faith. Because the appellate court reversed the grant of Rule 137 sanctions, however, the inference was no longer valid and no basis existed for awarding fees under the Consumer Fraud Act. *Krautsack I*, 329 Ill. App. 3d at 685. The appellate court reversed the statutory fee award and remanded the cause to the trial court for further proceedings. *Krautsack I*, 329 Ill. App. 3d at 685-86.

On remand, the case proceeded to a bench trial. Two witnesses testified: plaintiff and defendant Anderson. The trial court denied defendants' motion for a directed finding after the close of plaintiff's case in chief, but ultimately entered judgment for defendants on all counts of the amended complaint. After judgment was entered, plaintiff learned for the first time that, prior to trial, the California Attorney General had filed a 34-count felony complaint against defendant Anderson, charging him with grand theft, failure to return money, and trust account violations in connection with his safari business. Based on the documentation provided to plaintiff by the California Attorney General, plaintiff moved to vacate the judgment in this case and enter judgment in his favor. Plaintiff argued that defendant had violated discovery rules by failing to disclose the California charges and had committed perjury when he testified that he was not a travel agent.

The trial court denied the motion to vacate judgment. Although agreeing with plaintiff that the California charges should have been disclosed, those charges, as well as Anderson's subsequent plea of "no contest" to three of the felony counts, were relevant for impeachment purposes only and did not establish a ground for vacating the judgment. The trial court also rejected plaintiff's claim that Anderson committed perjury.

Thereafter, with leave of court, defendants filed their amended petition for attorney fees pursuant to section 10a(c) of the Consumer Fraud Act and Rule 137. Defendants sought fees and costs totaling over $30,000. Plaintiff moved to strike the fee petition. Relying on the appellate court's judgment in *Krautsack I*, plaintiff argued that for purposes of section 10a(c) of the Act, defendant must first establish that plaintiff was guilty of bad faith under the standard set forth in Rule 137, and that defendants' fee petition, on its face, failed to

identify any alleged violation of that rule. The trial court granted plaintiff's motion to strike:

> "I agree that the Appellate Court decision in this case greatly undermines a defendant seeking fees in this case, because they discuss the validity of the legal theory that the plaintiff was asserting and also held there were material issues of fact that precluded entry of summary judgment at that time.

> Even if I don't strike the *** amended motion for attorney's fees and I consider the merits of the motion for fees, I still find that the defendants are not entitled to the fees under either the Illinois Consumer Fraud Act or [Rule] 137.

> * * *

> I don't think the requisite bad faith or culpability under [Rule] 137 has been shown ***."

Defendants appealed the trial court's order striking their fee petition; plaintiff cross-appealed from the trial court's order granting judgment in favor of defendants on his consumer fraud and contract claims, as well as the trial court's order denying his motion to vacate that judgment.

The appellate court held that "the trial court properly struck defendants' petition for fees and costs because they failed to satisfy the requirements of Rule 137." "[T]here is not a single allegation by defendants of any false statement by plaintiff in any specific written document filed with the trial court. *** Additionally, defendants sought to recover fees and costs incurred for this entire litigation, which is improper." The appellate court further held that because defendants failed to satisfy the requirements of Rule 137, their request for fees under the Consumer Fraud Act must also fail since defendants did not show bad faith on plaintiff's part. No. 1–04–2135 (unpublished order under Supreme Court Rule 23).

With respect to plaintiff's cross-appeal, the appellate court held that the trial court's judgment on the merits in favor of defendants was not against the manifest weight of the evidence, and that the trial court did not err in denying plaintiff's motion to vacate the judgment. No. 1–04–2135 (unpublished order under Supreme Court Rule 23).

We allowed defendants' petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

### I

Defendants first argue that the appellate court erred in holding that bad faith is a prerequisite to an award of attorney fees and costs to a prevailing defendant under section 10a(c) of the Consumer Fraud Act. Plaintiff counters that this is the same issue defendants litigated and lost in *Krautsack I*, and that defendants, having failed to seek review of *Krautsack I* in this court, are now precluded from relitigating this issue under the law of the case doctrine. We disagree.

Generally, the law of the case doctrine bars relitigation of an issue previously decided in the same case. *People v. Tenner*, 206 Ill. 2d 381, 395 (2002). Thus, "the determination of a question of law by the Appellate Court on the first appeal may, as a general rule, be binding upon it on the second appeal." *Zerulla v. Supreme Lodge Order of Mutual Protection*, 223 Ill. 518, 520 (1906); accord *Tenner*, 206 Ill. 2d at 395. Significantly, however, the law of the case doctrine is inapplicable to this court in reviewing the decision of the appellate court. *Garibaldi v. Applebaum*, 194 Ill. 2d 438, 447 (2000); *People v. Triplett*, 108 Ill. 2d 463, 488 (1985); *Zerulla*, 223 Ill. at 520. Rather, "[s]ince this is the first time this case has been before us, we may review all matters which were properly raised and passed on in the course of the litigation." *Triplett*, 108 Ill. 2d at 488, citing *Relph v. Board of Education of De Pue Unit School District No. 103*, 84 Ill. 2d 436, 442 (1981); accord *Garibaldi*, 194 Ill. 2d at 447. Accordingly, we will consider defendants' argument, raised in *Krautsack I* and *Krautsack II*, that an award of attorney fees to a prevailing defendant under section 10a(c) of the Act should not be conditioned upon a finding that the plaintiff acted in bad faith. Before examining the provisions of the Consumer Fraud Act, we briefly review the principles of law that guide a court's interpretation of a statute.

The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006); *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). The best indication of this intent is the language of the statute, which must be given its plain and ordinary meaning. *Donald A.G.*, 221 Ill. 2d at 246; *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997). Where the language is unambiguous, the statute must be given effect without

resort to other aids of construction. *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006); *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 508 (2004). In examining a statute, a court must give effect to the entire statutory scheme. Thus, words and phrases should not be construed in isolation; rather, they must be interpreted in light of other relevant portions of the statute. *Donald A.G.*, 221 Ill. 2d at 246; *Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n*, 196 Ill. 2d 70, 87-88 (2001). Issues of statutory interpretation are questions of law which we review *de novo*. *Donald A.G.*, 221 Ill. 2d at 246.

Section 10a(a) of the Consumer Fraud Act authorizes a private right of action for "[a]ny person who suffers actual damage as a result of a violation of [the] Act." 815 ILCS 505/10a(a) (West 2004); *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 179 (2005); *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 16-17 (2003). This section also authorizes the court, in its discretion, to "award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a(a) (West 2004). Section 10a(c) supplements section 10a(a) by expressly authorizing, among other relief, an award of attorney fees and costs. Section 10a(c) states:

> "Except as provided in subsections (f), (g), and (h) of this Section,[1] in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, *reasonable attorney's fees and costs to the prevailing party*." (Emphasis added.) 815 ILCS 505/10a(c) (West 2004).

The term "prevailing party" encompasses a prevailing defendant, as well as a prevailing plaintiff. *Allen*, 208 Ill. 2d at 33-34, citing *Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.*, 247 Ill. App. 3d 1015, 1020 (1993); see also *Haskell v. Blumthal*, 204 Ill. App. 3d 596, 599 (1990). Because section 10a(c) states that the court "may" award attorney fees and costs, and the word "may" ordinarily

---

[1]This court has held subsections (f), (g), and (h), of section 10a(c) of the Consumer Fraud Act unconstitutional as special legislation. *Allen*, 208 Ill. 2d at 33.

connotes discretion (*People v. Ullrich*, 135 Ill. 2d 477, 484 (1990)), attorney fee awards are left to the sound discretion of the trial court (see *Haskell*, 204 Ill. App. 3d at 600; *Tague v. Molitor Motor Co.*, 139 Ill. App. 3d 313, 318-19 (1985)).

In determining whether a trial court abused its discretion, our appellate court has identified several factors or criteria a trial court may consider when ruling on a fee petition under section 10a(c). These factors include, but are not limited to, "(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions." *Graunke*, 247 Ill. App. 3d at 1022-23; see also *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 825-26 (1994). Although this nonexhaustive list of factors was first identified in a consumer fraud case involving a fee petition by a prevailing defendant (*Haskell*, 204 Ill. App. 3d at 600), these factors have been applied in cases involving fee petitions by both prevailing plaintiffs and prevailing defendants (see *Casey*, 296 Ill. App. 3d at 106-09 (prevailing defendants' fee petition); *Majcher v. Laurel Motors, Inc.*, 287 Ill. App. 3d 719, 730-31 (1997) (prevailing plaintiff's fee petition); *Washington Courte Condominium*, 267 Ill. App. 3d at 824-26 (prevailing plaintiffs' fee petition)).

Defendants do not dispute that these factors are relevant to a trial court's determination of whether to award fees to a prevailing defendant under section 10a(c) of the Act. Instead, defendants dispute the significance of a trial court's finding that the plaintiff acted in bad faith. Defendants argue that the plaintiff's bad faith, if any, is simply one factor to consider, but is not the controlling factor. We note that our appellate court is divided as to whether a prevailing defendant must show bad faith on the part of the plaintiff prior to an award of attorney fees under section 10a(c). Compare *Graunke*, 247 Ill. App. 3d at 1021 (holding that a finding of plaintiff's bad faith is not a prerequisite to the trial court's exercise of discretion to award fees), and *Boeckenhauer v. Joe Rizza Lincoln Mercury*, 361 Ill. App. 3d

-11-

470, 475 (2005) (rejecting "the notion that a prevailing defendant must show bad faith on the part of the plaintiff prior to being awarded attorney fees"), with *Casey*, 296 Ill. App. 3d at 108 (holding that trial court must make a threshold finding of plaintiff's bad faith before awarding fees to a prevailing defendant), and *Haskell*, 204 Ill. App. 3d at 602 (noting the "difficulty in envisioning a circumstance arising under the [Consumer Fraud] Act where fees should be awarded a defendant absent bad faith on the part of a plaintiff").

In the present case, the appellate court ruled in *Krautsack I* that a trial court must first determine whether the plaintiff acted in bad faith, and only if such finding is made should the trial court analyze the remaining factors. *Krautsack I*, 329 Ill. App. 3d at 685, quoting *Casey*, 296 Ill. App. 3d at 108. In *Krautsack II*, the appellate court adhered to its earlier ruling. No. 1–04–2135 (unpublished order under Supreme Court Rule 23). Defendants argue that the appellate court's decision is contrary to the plain language of section 10a(c) of the Act, and that the legislature did not intend to establish a different standard for defendants seeking fees from that applicable to a plaintiff seeking fees. Plaintiff counters that section 10a(c) does not limit the trial court's discretion in awarding fees under the Act, and that requiring a bad-faith finding where a defendant seeks fees is entirely consistent with the remedial purposes of the Act.

Although we agree with defendants that nothing in the plain language of section 10a(c) conditions a fee award to a prevailing defendant on a finding that the plaintiff acted in bad faith, we also agree with plaintiff that section 10a(c) does not expressly restrict a trial court's discretion or identify the circumstances under which a fee petition should be allowed. Thus, our analysis must go beyond the plain language of section 10a(c). We must examine the fee-shifting provision in light of the entire statute, keeping in mind the subject the statute addresses, the legislature's apparent objective in adopting the statute, and the evils sought to be remedied. See *R.L.S.*, 218 Ill. 2d at 433; *People v. Palmer*, 218 Ill. 2d 148, 156 (2006).

As the full title of the Consumer Fraud Act explains, it is "[a]n Act to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ***." Pub. Act 78–904, eff. October 1, 1973 (amending the title of the Act and

-12-

adding section 10a, among other amendments); see also *Scott v. Ass'n for Childbirth at Home, International*, 88 Ill. 2d 279, 288 (1981) (the Act "is a regulatory and remedial enactment intended to curb a variety of fraudulent abuses and to provide a remedy to individuals injured by them"). In addition to the private right of action section 10a establishes, the Attorney General is empowered to investigate and prosecute offenders. 815 ILCS 505/3 through 7 (West 2004); *Allen*, 208 Ill. 2d at 16. By its own terms, the Act "shall be liberally construed to effect the purposes thereof." 815 ILCS 505/11a (West 2004).

Because individual consumer fraud claims are frequently small, the attorney fee provision in section 10a(c) ensures that defrauded consumers will be able to exercise their rights under the statute. *Allen*, 208 Ill. 2d at 30-31. As we explained in *Cruz v. Northwestern Chrysler Plymouth Sales, Inc.*, 179 Ill. 2d 271, 279-80 (1997):

> "[I]n consumer fraud cases the attorney fee awards can easily constitute the largest part of a plaintiff's recovery. The legislature realized this when it enacted the fee-shifting provision of the Consumer Fraud Act. That provision is premised on the recognition that plaintiffs would be reluctant to seek redress for consumer fraud if the recovery would be nearly or completely consumed by attorney fees and was designed to encourage plaintiffs who have a cause of action to sue even if recovery would be small."

See also A. Saltzman, *A Brief Look at Statutory Attorneys' Fees in Illinois*, 73 Ill. B.J. 266, 268 (1985) ("Where the legislature has enacted laws designed to protect the public or to create new rights in members of the public and has provided for private rights of action under these laws, it often also provides for fee shifting to ensure that the private rights of action will be exercised").

The legislature's allowance of fee awards to prevailing defendants is necessarily motivated by a different concern: "to deter bad-faith conduct by a plaintiff and to reimburse a defendant when that occurs." *Haskell*, 204 Ill. App. 3d at 602; see also *Allen*, 208 Ill. 2d at 33 (noting that consumer fraud defendants faced with defending a frivolous suit may seek recourse under the fee-shifting provision of section 10a(c)).

Limiting a consumer fraud defendant's ability to recover fees to instances where the plaintiff acted in bad faith is consistent with the purpose of the Act. If this limitation did not exist, a prevailing defendant could be awarded fees simply because the plaintiff, although having a legitimate claim and proceeding in good faith, lost at trial on the proofs. The potential for such a penalty would act as a deterrent to the filing of valid consumer fraud claims. *Casey*, 296 Ill. App. 3d at 107. Our duty, of course, is to avoid a construction that would defeat the statute's purpose or yield absurd or unjust results. *In re A.P.*, 179 Ill. 2d 184, 195 (1997).

Defendants argue that a bad-faith requirement for fee awards to prevailing defendants unfairly distorts consumer fraud actions in favor of plaintiffs. According to defendants, the legislature could not have intended to create a massive incentive for plaintiffs to sue by providing an almost automatic right to attorney fees, while at the same time extinguishing any possibility that defendants could recover their fees unless they demonstrated that the plaintiff acted in bad faith.

Contrary to defendants' argument, an attorney fee award to a prevailing plaintiff is not automatic. A prevailing plaintiff, like a prevailing defendant, is entitled to petition the court for an award of attorney fees and costs pursuant to section 10a(c), but the award of fees is discretionary, not mandatory. See, *e.g.*, *Majcher*, 287 Ill. App. 3d at 730; *Haskell*, 204 Ill. App. 3d at 600; *Tague*, 139 Ill. App. 3d at 318. Circumstances may exist which militate against an award of fees to a prevailing plaintiff. See *Washington Courte Condominium*, 267 Ill. App. 3d at 825 (affirming denial of fee award to the prevailing plaintiff where the trial found the defendants acted out of "stupidity," as opposed to bad faith, and judgment of $1.7 million was a sufficient deterrent); *Tague*, 139 Ill. App. 3d at 318-19 (affirming denial of fee award to the prevailing plaintiff where the plaintiff was awarded $1,125 in actual damages and $17,000 in punitive damages).

Although an award of attorney fees to a prevailing plaintiff is not automatic, we recognize that a prevailing plaintiff is more likely than a prevailing defendant to recover attorney fees. This result, however, is not a function of any distortion of statutory language or legislative intent. Rather, it is a function of the remedial purpose of the Act. That is, without the ability to recover attorney fees, the protections of the Act are illusory. *Allen*, 208 Ill. 2d at 31.

-14-

Defendants' argument also overlooks that a prevailing plaintiff has already proven that the defendant is guilty of consumer fraud. An award of fees under that circumstance causes defendants "to bear the full and fair consequences of their illegal conduct" (*Warren v. LeMay*, 142 Ill. App. 3d 550, 583 (1986)) and fulfills the Act's laudatory purpose of protecting consumers' rights. A prevailing defendant, on the other hand, has not necessarily established anything more than that the plaintiff's efforts at suit were unsuccessful. In light of the uncertainty of litigation, routinely awarding fees under this circumstance would discourage consumer fraud plaintiffs from pursuing their statutory rights, frustrating the legislature's intent when it adopted the Act. See *Casey*, 296 Ill. App. 3d at 107.

We conclude that a bad-faith requirement for fee awards to a prevailing defendant, without a corresponding bad-faith requirement for fee awards to a prevailing plaintiff, is consonant with the purposes of the Consumer Fraud Act. Thus, where a prevailing defendant petitions the trial court for a reasonable attorney fee under section 10a(c), only if the trial court makes a threshold finding that the plaintiff acted in bad faith should the trial court consider other circumstances relevant to its exercise of discretion. Although a prevailing plaintiff may seek to demonstrate a defendant's bad faith, a plaintiff is not required to do so. Accordingly, a trial court need not make a threshold finding of bad faith in order to award a plaintiff attorney fees under section 10a(c) of the Act.

II

We next consider whether, as the appellate court held, Rule 137 provides the proper standard for judging a party's bad faith when considering the propriety of fees under section 10a(c) of the Act. No. 1–04–2135 (unpublished order under Supreme Court Rule 23) (applying its earlier ruling in *Krautsack I*, 329 Ill. App. 3d at 685). Relying on *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 126 F.3d 1028 (7th Cir. 1997), defendants argue that the appellate court's standard is too narrow.

In *Door Systems*, a federal district court awarded attorney fees to the prevailing defendant in a suit under the Act, treating such award as an automatic right. The court of appeals recognized that a fee

award under the Act is not automatic and then sought to clarify the appropriate standard for fee awards, stating in relevant part:

> "We think it reasonably plain that bad faith is too narrow a standard. Even if a suit is brought in good faith, it could be so lacking in merit or so burdensome to defend against as to be oppressive, in which event the defendant would have a powerful equitable claim to recover a reasonable attorneys' fee." *Door Systems*, 126 F.3d at 1030.

The court of appeals explained that an oppressive suit "was something that might be described not just as a losing suit but as a suit that had elements of an abuse of process, whether or not it had all the elements of the tort." *Door Systems*, 126 F.3d at 1031.

The difference between the oppression standard adopted by the court of appeals and the bad-faith standard employed by our appellate court is unclear, and defendants here do not attempt to illuminate the matter. We note that one federal district court has concluded that "[a]ny significant distinction between the 'bad faith' standard and the 'oppression' standard is not overtly apparent." *Janikowski v. Lynch Ford, Inc.*, 73 F. Supp. 2d 956, 959 (N.D. Ill. 1999).

While we are not persuaded that this court should adopt the rationale of *Door Systems*, we agree with defendants that the bad-faith standard, as articulated by the appellate court, is too narrow. As already noted, the appellate court held that "Rule 137 provides the proper standard for bad faith" when determining the propriety of fees under section 10a(c) of the Act. *Krautsack I*, 329 Ill. App. 3d at 685, citing *Casey*, 296 Ill. App. 3d at 108. Rule 137 provides in relevant part:

> "The signature of an attorney or party [on a pleading, motion or other paper] constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this

rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." 155 Ill. 2d R. 137.

"The purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions." *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 285-86 (2001); see also *Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24, 34 (2002) (identifying Rule 137 as one of the procedures in place to resolve contentions of bad-faith litigation); *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 279 (1997) ("Rule 137 was adopted as a means of preventing false and frivolous filings").

Because Rule 137 addresses the pleadings, motions and other papers a litigant files, the rule does not provide a sanction against all asserted instances of bad faith conduct by a litigant or the litigant's attorney during the course of litigation. See *In re Marriage of Oleksy*, 337 Ill. App. 3d 946, 949 (2003). For example, a party's pleadings may conform to Rule 137, yet the party may be guilty of other rule violations amounting to bad faith. We discern no reason why a prevailing defendant should be limited by Rule 137 in establishing a plaintiff's bad faith. Rule 137, and the body of case law that has developed around it, provide useful guidance to litigants and judges, but a defendant's failure to demonstrate bad faith by the plaintiff under Rule 137 is not fatal to a prevailing defendant's fee petition under the Act. Appellate court opinions which hold to the contrary, including *Krautsack I*, are overruled.

In the present case, the appellate court found that defendants failed to satisfy the requirements of Rule 137 and held that defendants' request for fees under the Consumer Fraud Act "was likewise properly stricken since there was no showing of bad faith on the part of the plaintiff." No. 1–04–2135 (unpublished order under Supreme Court Rule 23). Because defendants were not required to demonstrate bad faith under Rule 137, defendants' petition for statutory fees was improperly stricken.

Although we might ordinarily remand this matter to the trial court to consider defendants' fee petition anew, we find remand to be unnecessary. In their response to plaintiff's motion to strike defendants' fee petition, defendants argued: "Assuming this Court [*i.e.*, the trial court] determines that the Defendants are required to show bad faith, the Petition for Attorney's Fees does not require an evidentiary hearing. *** All of the allegations contained in Defendants' Petition for Attorney's Fees are reflected in the court file, pleadings and trial record. *** An evidentiary hearing will needlessly add delay and expenses to this matter." See also No. 1–04–2135 (unpublished order under Supreme Court Rule 23) (holding that defendants waived any challenge to the trial court's failure to hold an evidentiary hearing). Accordingly, we will conduct our own review of defendants' fee petition.

III

The overriding theme of defendants' request for attorney fees and costs under section 10a(c) of the Act is that plaintiff's suit was frivolous because it "had nothing to do with consumer fraud," "but everything to do with a client that was merely upset because it rained on a trip." According to defendants, plaintiff unreasonably, and without any legal basis, sought to hold them liable for the weather. We disagree.

Although the rains in East Africa prior to and during the safari formed part of the backdrop for the present litigation, plaintiff was not, contrary to defendants' argument, seeking to hold defendants liable for the inclement weather. Rather, as the appellate court observed in *Krautsack I*:

> "[Plaintiff] maintains that it is not his position *** that Anderson and Luxury Adventures were responsible for the weather, but, rather, his position is that Anderson and Luxury Adventures failed to disclose their personal interest in having [plaintiff] not postpone the trip.
>
>    ***
>
>    Substantively, [plaintiff]'s claim is based on Anderson's failure to disclose certain facts with respect to his motives and

-18-

interests based on his fiduciary duty to [plaintiff]." *Krautsack I*, 329 Ill. App. 3d at 676.

The appellate court recognized that plaintiff's theory of recovery, although "uncommon," was "not *** unheard of." *Krautsack I*, 329 Ill. App. 3d at 677. We thus decline to find that plaintiff's suit was frivolous.

As a further basis for statutory fees, defendants argued that plaintiff, in his memorandum in support of his motion to vacate the judgment order, "falsely alleged that David Anderson was personally involved in any fraudulent activities when the evidence clearly established that he did not." In support of this argument, defendants cited finding No. 44 in the trial court's judgment order, which states: "David Anderson did not actively participate in any fraud, and cannot be found personally liable for consumer fraud."

Plaintiff's statement that Anderson was personally involved in any fraudulent activities was based on the felony charges brought against Anderson in California which had not been disclosed to plaintiff prior to the instant trial. Based on the case law plaintiff cited in his memorandum filed in the trial court, it was his argument that the trial court could consider this new evidence to show Anderson's state of mind, motive and intent in his dealings with plaintiff. See *Thompson v. Petit*, 294 Ill. App. 3d 1029, 1035 (1998) ("admission of evidence of prior similar tortious or wrongful conduct to establish purpose, intent, motive, knowledge or other mental state of a party to a civil action forms an exception to the general rule that prohibits proof of one wrongful act by evidence of the commission of another such act"); accord *Reinneck v. Taco Bell Corp.*, 297 Ill. App. 3d 211, 215 (1998). Plaintiff obviously hoped to persuade the trial court that, contrary to its finding, Anderson was, in fact, personally involved in any fraudulent activities and that the trial court should vacate the judgment in favor of defendants. Although the trial court ultimately denied plaintiff's motion to vacate the judgment, the subject statement and related argument do not demonstrate bad faith by the plaintiff.

Defendants also argued that statutory fees are warranted because plaintiff continually alleged that he was allowed to "postpone" the safari under the parties' agreement, but was unable to offer any evidence at trial to support this claim. We note that defendant Anderson testified in his deposition that plaintiff raised the issue of

postponement with Anderson shortly before the scheduled safari departure date, and agreed that plaintiff was looking for advice as to whether he should proceed with the scheduled safari, reschedule, or cancel. Anderson advised plaintiff, "[B]efore you decide to do that [*i.e.*, postpone the safari], why don't you let me contact my people on the ground in East Africa to see what kind of report they come back with." Anderson also testified that rescheduling to a different date "definitely" would have been possible. Finally, Anderson testified that the document setting forth Luxury's limitation of liability did not address postponement. See also *Krautsack I*, 329 Ill. App. 3d at 670-71 (summarizing Anderson's deposition testimony). Although the trial court, after hearing all the evidence presented at trial, concluded that the parties' agreement did not provide for postponement, in light of Anderson's pretrial deposition testimony, we cannot say that plaintiff's allegation concerning postponement of the safari was made in bad faith.

Defendants additionally argued that plaintiff falsely stated, in his memorandum in support of his motion to vacate the judgment order, "that a California judge called David Anderson 'a travel agent who is registered with the State.' " According to defendants, plaintiff failed to quote the California judge completely and, had he done so, it would have been apparent that the California judge had not labeled Anderson a travel agent.

Plaintiff's allegedly false statement was made in the context of his argument that Anderson committed perjury when he testified that he was not a travel agent. In support of this proposition, plaintiff provided a copy of Luxury's California certificate of registration as a "Seller of Travel," copies of the California code defining and regulating sellers of travel, and a transcript from the hearing from which plaintiff's allegedly incomplete statement by the California judge was drawn. After reviewing the transcript, we agree with defendants that the quote, "a travel agent who is registered," was not intended by the California judge to refer specifically to Anderson. That said, during the course of the same colloquy the judge did indicate that "defendant is registered" in California as a seller of travel. We note that whether defendant was a "travel agent," as that term is used in the industry, was a source of disagreement and confusion during the course of this litigation. See No. 1–04–2135 (unpublished order under

Supreme Court Rule 23). We need not determine the differences, if any, between a seller of travel and a travel agent. For purposes of the present argument, inasmuch as plaintiff provided the complete transcript of the hearing in California, we have difficulty concluding that plaintiff intended to deceive the trial court by quoting only a portion of the judge's actual statement, and will therefore infer no bad faith.

Although defendants raised still further arguments in their fee petition and their response to plaintiff's motion to strike, we find it unnecessary to review these arguments in detail here. After careful review, we conclude that these arguments are either not supported by the record or insufficient to demonstrate bad faith by the plaintiff. Accordingly, defendants are not entitled to an award of attorney fees and costs under section 10a(c) of the Consumer Fraud Act.

IV

Defendants next argue that the appellate court improperly affirmed the trial court's refusal to award sanctions pursuant to Rule 137. In their fee petition, defendants made the same arguments in support of Rule 137 sanctions as they did in support of statutory fees. Having rejected those arguments, no basis exists for an award of fees under our rule.

CONCLUSION

For the reasons discussed above, we affirm the judgment of the appellate court affirming the judgment of the trial court.

*Affirmed*.

JUSTICE BURKE took no part in the consideration or decision of this case.

JUSTICE KARMEIER, dissenting:

Section 10a(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) provides in relevant part that:

-21-

"in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, *reasonable attorney's fees and costs to the prevailing party*." (Emphasis added.) 815 ILCS 505/10a(c) (West 2004).

The majority holds that when the defendant is the prevailing party, the trial court necessarily abuses its discretion in awarding attorney fees and costs absent a finding that the plaintiff acted in bad faith. Because the majority is effectively amending the statute to add a requirement that is not there, I respectfully dissent.

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. The best indication of that intent is the language of the statute itself, and where that language is unambiguous, the statute must be enforced as written. *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 6-7 (2004). This court cannot depart from the plain language of the statute by reading into it exceptions, limitation, or conditions not expressed by the legislature. *In re Michelle J.*, 209 Ill. 2d 428, 437 (2004).

The majority acknowledges that nothing in the plain and unambiguous language of section 10a(c) conditions a fee award on a finding that the plaintiff acted in bad faith, but contends that because section 10a(c) does not expressly restrict a trial court's discretion or identify the circumstances under which a fee petition should be allowed, section 10a(c) must be examined in light of the entire statute to determine whether the trial court's proper exercise of discretion requires a finding of bad faith on the part of the plaintiff before a prevailing defendant can be awarded costs and fees. Slip op. at 12. I submit that the legislature's failure to include such a requirement in section 10a(c) demonstrates that the legislature did not intend to require a prevailing defendant to demonstrate bad faith on the part of the plaintiff. The majority relies on the rule that when interpreting a statute, a court must give effect to the entire statutory scheme, interpreting words and phrases in light of other relevant portions of the statute. Slip op. at 10. However, proper application of this rule does not permit this court to create additional requirements which are not found in the plain and unambiguous text of the statute, but which this court deems necessary to effectuate the statute's purpose.

Although the majority makes a persuasive case as to why section 10a(c) should require a prevailing defendant to demonstrate that the plaintiff acted in bad faith, the legislature chose not to include such a requirement, and it is not the prerogative of this court to correct the legislature's "omissions." *In re Marriage of Murphy*, 203 Ill. 2d 212 (2003). As we recently noted: "This court may not legislate, rewrite or extend legislation. If a statute, as enacted, seems to operate in certain cases unjustly or inappropriately, the appeal must be to the General Assembly, and not to this court." *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 510 (2006). Because the majority is, under the guise of defining the trial court's proper exercise of its discretion, imposing a limitation on a defendant's right to costs and fees under section10a(c) which is not found in the plain and unambiguous language of the statute, I dissent.