2025 IL App (1st) 232329-U

SECOND DIVISION
August 19, 2025

No. 1-23-2329

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| GOODMAN CHICAGO CONDOS, LLC, and SOT3, LLC, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | 2020 CH 7241 |
| ATRIUM COURT VILLAGE HOME CONDOMINIUMS, RICK WILLIAMS, MICHELLE PONTARELLI, TIFFINEY ALLEN, and LATOYA HARRIS, | ) ) ) ) ) ) | Honorable Pamela McLean Myerson, Judge Presiding. |
| Defendants, | ) ) | |
| (Michael T. Franz, Respondent-Appellant). | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Vacated and remanded. Rule 137 sanctions could not lie for documents that were not filed in court. Remanded for further proceedings.

¶ 2    What began as a dispute between two condo owners and their condo association morphed into allegations that the association's attorney (or his clients) lied in several court filings. In a last-minute attempt to escape sanctions for those falsehoods, the attorney, Michael T. Franz, allegedly fabricated evidence. After an extensive evidentiary hearing in which the circuit court

found that Franz fabricated an email purportedly from the condo association president, the court imposed Supreme Court Rule 137 sanctions against Franz, awarding the plaintiff's attorneys more than $50,000 in fees and costs.

¶ 3        On appeal, Franz raises several issues. Fortunately for him, we are compelled to vacate the sanctions, as Rule 137 only applies to documents that are filed with the court. Because Franz never filed the brief that contained the fake email with the clerk of the court, Rule 137 cannot be used to punish him. So we vacate the court's judgment. But that leaves other available remedies for that fabricated email, plus other allegations of sanctionable conduct that the circuit court declined to reach. We remand for reconsideration of the sanctions petition.

¶ 4                                          BACKGROUND

¶ 5        This appeal sprouts from two disputes between owners of two condo units in Berwyn and the condominium association board. The plaintiffs in the original action, Goodman Chicago Condos, LLC, and SOT3, LLC, each own a condo in the Atrium Court Village Home Condominium complex. (Because both Goodman and SOT3 are owned by the same members, controlled by the same managers, share the same registered agent, and hired the same law firm, we will refer to them collectively as "Goodman" or "plaintiff" for ease.)

¶ 6        The Atrium condo complex had a board association ("Atrium" or "the association"), established as a not-for-profit corporation, which managed and administered the condominium complex. During the relevant events in this case, Rick Williams was the president of the Atrium's board of directors, while the other named defendants were board members. Attorney Franz, the respondent and appellant here, represented Atrium and the board members during most of the case.

¶ 7        Sometime before August 2018, water damaged a condo that Goodman owned in the

Atrium complex. Believing the association should pay to repair the damage, Goodman filed suit, alleging that the association breached its fiduciary duties by failing to make the necessary repairs and maintenance to the building. (We will refer to this as the water-damage lawsuit, which is not the complaint that spawned this appeal.)

¶ 8       After the water-damage lawsuit was filed, the association board voted to ask Great American Insurance Company, the association's insurance carrier, to defend and indemnify them against the water-damage lawsuit. But Franz, on the association's behalf, did not tender the claim until January 2020, more than 18 months later.

¶ 9       Great American swiftly denied the claim as untimely. Nothing more came of this claim.

¶ 10       In December 2020, Goodman and SOT3 filed a new complaint against the association and board members. This suit is the action that spawned the allegations relevant to this appeal.

¶ 11       Goodman and SOT3 alleged that the board violated the Illinois Condominium Property Act and the bylaws of the association by holding unannounced, closed-door board meetings. Goodman claimed that the Board met to discuss Great American's denial of the water-damage lawsuit claim and, at that meeting and without notifying Goodman, decided to not sue Great American to compel them to defend and indemnify the association. This meeting, held without prior announcement to the condo owners and behind closed doors, violated the Condominium Act. SOT3 alleged that the board voted to initiate eviction proceedings against its tenant in a similar, unannounced, closed-door meeting.

¶ 12       The association and board members filed an answer to the complaint generally denying the allegations and also asserted several affirmative defenses. In the Second Affirmative Defense, the board claimed that the directors met in a private meeting to discuss Great American's denial of their claim. At that meeting, the board "voted on but did not approve"

filing suit against the insurance company for wrongful denial of the claim. Franz, as counsel for the association and board members, signed the answer and affirmative defenses.

¶ 13    Discovery began in the case. After the association missed a deadline to respond to written interrogatories and disclose documents, Goodman filed a motion to compel their responses, including to several written interrogatories. The association eventually responded to the written interrogatories. In an answer to written Interrogatory Number 8, the association asserted that, at a meeting discussing the insurance denial, the board discussed whether they should sue Great American to compel coverage but "determined that the cost of filing a lawsuit" would be "prohibitive," and that Goodman should be responsible for paying the cost to repair the damaged unit. Attorney Franz prepared and signed the answers to these interrogatories.

¶ 14    Goodman deposed Rick Williams, the board president at the relevant time. Williams testified that he *did not know* that the association had submitted a claim to Great American nor that the claim had been denied. Williams also testified that the board did not hold a vote about whether to sue Great American to compel coverage. This testimony, obviously, directly contradicted both the Second Affirmative Defense and the answer to Interrogatory Number 8, both of which indicated that the board not only knew that Great American denied its claim for coverage but that the board considered, and by vote rejected, the idea of suing the insurer.

¶ 15    Soon thereafter, Goodman moved for Rule 137 and Rule 219(c) sanctions, alleging that the association had lied in the Second Affirmative Defense and the answer to Interrogatory Number 8. The association, still with Franz as counsel, filed a brief opposing the sanctions. In that brief, Franz attached an affidavit from Tish McMahon a former board member and treasurer of the condo association board. As part of her role as treasurer, she handled the insurance and financial issues that came before the board.

¶ 16    McMahon swore that, in response to the water-damage lawsuit and at the recommendation of counsel, the association tendered a claim for defense and indemnification to Great American. After learning that Great American had denied the claim, the board met in a closed-door meeting to discuss whether to file a lawsuit against Great American. At that meeting, the board ultimately decided not to sue. McMahon swore that she supported that decision.

¶ 17    A few days later, the court heard argument on Goodman's motion for sanctions. During the hearing, Franz repeatedly relied on McMahon's affidavit to prove that the information in the Second Affirmative Defense, as well as the answer to Interrogatory Number 8, was accurate. After granting the motion in part (not relevant here), the court entered and continued the hearing, holding off on deciding the rest of the allegations while the case proceeded.

¶ 18    Goodman then deposed the signatory of the affidavit, McMahon, who all but disavowed the affidavit. Though she admitted signing it, she testified that she did not have personal, first-hand knowledge of the contents of the affidavit. She had stepped down from the board before Great American denied the association's claim in the water-damage lawsuit; she was not involved in the meeting that she referenced in her affidavit. Whatever she knew about the decision not to sue Great American came second-hand from another board member.

¶ 19    Shortly thereafter, Franz withdrew as counsel for the defendants. Goodman filed an amended motion for sanctions, adding allegations that Franz knew or should have known that the statements in McMahon's affidavit were false. In the amended motion, Goodman noted that, at the hearing for sanctions, Franz specifically relied on McMahon's affidavit to defend himself from the allegations that he sponsored false information.

¶ 20    The parties settled the underlying lawsuit; all claims against the association and the board members were dismissed in July 2023. The motions for sanctions against Franz remained

unresolved. The court scheduled an evidentiary hearing for September 27, 2023.

¶ 21    But on September 18, Franz filed an "emergency motion" asking the trial court to strike the hearing and deny the motion for sanctions. Franz argued that McMahon's deposition refuted any allegations of his wrongdoing, and that it would be unfair and burdensome to require her and other non-party witnesses to testify. The court denied the emergency motion.

¶ 22    On September 25, two days before the evidentiary hearing, Franz emailed a "bench brief" directly to the trial court and plaintiff's counsel. Notably, Franz never filed the bench brief with the clerk of the circuit court.

¶ 23    The brief included a previously undisclosed exhibit that purported to be an email from Williams to Franz, sent on February 27, 2021. (We will refer to this email as the "February 27 email.") In that email, written in all capital letters, Williams informed Franz that the board had held a meeting about Great American's denial and voted not to sue the insurer. The attached exhibit was a PDF copy of a printed version of the email; the original email, in its native format, was not included in the bench brief.

¶ 24    That set off alarm bells with Goodman, in no small part because the email, if disclosed earlier, would have fully vindicated Franz. Given the last-minute disclosure of the February 27 email, Goodman asked the trial court to bar Franz from offering it as evidence. But in light of the seriousness of the allegations and the possible relevance of the email, the trial court came up with another solution: it gave Goodman 30 days to conduct discovery into the veracity of the email. The court then reset the evidentiary hearing to November 8, 2023.

¶ 25    Given a month to learn more about the February 27 email, Goodman sent a subpoena to the law firm of Sanchez, Daniels and Hoffman, LLP (Sanchez Daniels), where Franz was working when he purportedly received the February 27 email. The subpoena asked Sanchez

Daniels to produce the February 27 email in its native form, including any metadata or attachments, as well as any other emails in the same conversation.

¶ 26    The firm's in-network administrator, Hector Hernandez, searched for the subpoenaed information on the firm's network systems but found nothing. In fact, after searching the firm's archive, there was no evidence that the February 27 email had ever been received.

¶ 27    Before the evidentiary hearing, Goodman filed a brief laying out the specific allegations for which they sought sanctions. Plaintiff alleged that Franz drafted, signed and filed four documents containing false information, all related to Great American's decision to deny coverage and defense in the water-damage lawsuit: (1) the Second Affirmative Defense; (2) the answer to plaintiff's Interrogatory Number 8; (3) Tish McMahon's affidavit; and (4) the February 27 email, which Goodman alleged Franz fabricated to rebut the other allegations. Goodman argued that these misdeeds violated both Supreme Court Rule 137, which deals with false information in pleadings and other documents, and Supreme Court Rule 219(c), involving sanctions for discovery violations.

¶ 28    On November 8, 2023, the parties presented evidence on the alleged sanctionable conduct. Relevant to this appeal, Hernandez, the network administrator at Franz's former law firm, Sanchez Daniels, testified that the law firm used an email system that archived every email that was sent or received by the firm's addresses. Once an email was sent to one of the firm's email addresses, the system would create an archived copy in a remote cloud server for 99 years that was separate from the recipient's email account. Even if the recipient of the email deleted it from their account, the archive would retain a copy. Only Hernandez and the email's service provider could delete something from the archive, he said.

¶ 29    Hernandez testified that after Sanchez Daniels received the subpoena from Goodman, he

searched the firm's cloud archive for the message. He did not find a copy of the February 27 email in the archive or any evidence of a message between Williams and Franz on that date.

¶ 30    Williams also testified at the hearing that he did not remember sending the February 27 email, though since the message was in all caps, it was possible he sent it.

¶ 31    Goodman also called Franz to testify. When asked why he produced the email in a paper format, rather than in the native format the other emails in the case had been tendered, Franz said that he did not have access to his old email account. He testified that he found the email while preparing for the original sanctions hearing and only had it in a paper format. He could not explain why he did not tender the email over earlier in the case or why he only found it on the eve of the original sanctions hearing.

¶ 32    On November 30, 2023, the court issued an order granting Goodman's motion for sanctions. In that order, the court concluded that "Mr. Franz has not been candid with this Court." The court first walked through the lengthy procedural history of the case, culminating when Franz emailed the trial judge the bench brief with the February 27 email. The court confirmed that Franz had included the February 27 email in the bench brief he emailed the court, but that the bench brief and February 27 email had never been filed with the court clerk. After discussing the evidence in depth, the court ruled that "the evidence submitted at the hearing proves that the [February 27 email] was fabricated by Franz."

¶ 33    The court based that finding on several reasons. First, the February 27 email "surfaced a few days before the hearing, after the Court had denied Mr. Franz'[s] last-ditch effort to strike the hearing." The court also found it suspicious that the February 27 email had been produced in hard-copy form, even though he produced other emails in the case in electronic form. But it was Hernandez's testimony that most moved the court. The court credited his testimony that the

archive did not have a copy of the February 27 email, even though it created a copy of every email in and out of the firm's servers.

¶ 34    The court concluded that Franz "violated Rule 137 by creating and submitting a falsified document to the Court—the [February 27 email]." But while the court further concluded that the falsified email damaged Franz's credibility as to the other three allegations, it ultimately decided that "submission of the knowingly falsified [February 27 email] is egregious enough in itself to justify sanctions under Rule 137." In other words, the court did not rule on the other three allegations. The court ordered Franz to pay more than $50,000 in attorney's fees and costs to Goodman's counsel.

¶ 35                                        ANALYSIS

¶ 36    Franz raises several challenges to the circuit court's ruling. But our resolution turns on one question: does Rule 137 apply to the bench brief, which Franz emailed directly to the trial judge but *never filed* with the clerk of the circuit court? The scope of this supreme court rule is a question of law we review *de novo*. *People v. Tousignant*, 2014 IL 115329, ¶ 8.

¶ 37    We interpret our supreme court's rules the same as a statute. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 12. Our primary goal is to give effect to the drafters' intent. *Id*. The best indication of intent is the language's plain and ordinary meaning. *Id.* If the language is clear and unambiguous, we apply the language without resort to other construction aids. *Id.*

¶ 38    As Rule 137 is penal in nature, we narrowly construe it. *Id*.; *McCarthy v. Taylor*, 2019 IL 123622, ¶ 17. And like a statute, we read the language in context to avoid rendering passages superfluous or nonsensical. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 22.

¶ 39    This court has often stated that Rule 137 is limited to documents filed in court. See *Benz v. Department of Children & Family Services*, 2015 IL App (1st) 130414, ¶ 44 ("The rule applies

only to pleadings, motions, and other papers filed by a litigant."); *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 16 (2009) ("Rule 137 addresses the pleadings, motions and other papers a litigant files") (internal quotation marks omitted); *Bara Chicago, LLC v. Big Cheese Wrigleyville, LLC*, 2022 IL App (1st) 201314-U, ¶ 28 (unpublished order under Supreme Court Rule 23(e)) ("Rule 137 provides for sanctions against attorneys and parties who sign pleadings but upon filing of same" fail to ensure their factual accuracy).

¶ 40 Our supreme court has not directly addressed the issue but has strongly implied the same. See *McCarthy v. Taylor*, 2019 IL 123622, ¶ 19 ("The plain language of Rule 137 authorizes a court to impose sanctions against a party or counsel for *filing* a motion or pleading that is not well grounded in fact") (emphasis added); *Lake Environmental, Inc.*, 2015 IL 118110, ¶ 7 ("Rule 137 requires that any pleading, motion, or other document *filed in court* be well-grounded in fact[.]") (emphasis added); *Krautsack v. Anderson*, 223 Ill. 2d 541, 562 (2006) ("Rule 137 addresses the pleadings, motions and other papers *a litigant files*") (emphasis added); *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 279 (1997) (rule was adopted as "a means of preventing false and frivolous *filings*[.]") (emphasis added).

¶ 41 In *Nolan v. Hearthside Homebuilders, Inc.*, 2020 IL App (1st) 182492, ¶ 114, this court squarely held that Rule 137 only applies to pleadings, motions and other documents that are filed with the court; the rule cannot be used as a sanction for signing a non-filed document. Thus, an affidavit that one party signed and whose attorney tendered to the opposing party, but never filed in court, was beyond the reach of Rule 137. *Id*.

¶ 42 The court in *Nolan* based its interpretation on the plain language of Rule 137 as well as the strong intimations from our supreme court that Rule 137 only covers documents filed in court. *Id*. ¶¶ 112-13. We have already explained the latter reasoning above, with quotations from

supreme court decisions clearly implying the limited scope of the rule. We agree as well with *Nolan*'s reading of Rule 137.

¶ 43    The opening language of Rule 137 provides that "[e]very pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name ***." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). The "signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact *** and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Id.*

¶ 44    That language in subsection (a) is not expressly limited to documents filed in court. Pleadings and motions are always filed, but the phrase "other documents" is sufficiently vague to include materials that are not.

¶ 45    Subsection (b), however, provides that "[a]ll proceedings under this rule shall be brought within the civil action in which the pleading, motion or other document referred to *has been filed*." (Emphasis added.) *Id*. § 137(b). It is not possible to divorce that language from subsection (a); it would not make sense unless the original intent was to limit the scope of Rule 137 to documents filed in court. See *Nolan*, 2020 IL App (1st) 182492, ¶ 113. And reading that language out of subsection (b), thereby broadening the scope of Rule 137 beyond documents that are filed in court, would be anything but a narrow reading of that penal rule.

¶ 46    The importance of a narrow construction of Rule 137 has often led courts to note that "the rule does not provide a sanction against all asserted instances of bad-faith conduct by a litigant or the litigant's attorney during the course of litigation." *Krautsack*, 223 Ill. 2d at 562; see also *Kensington's Wine Auctioneers and Brokers, Inc. v John Hart Fine Wine, Ltd.*, 392 Ill

App 3d. 1, 15 (2009) (Rule 137 "does not authorize sanctions for all violations of court rules and acts of misconduct."); *Bara Chicago, LLC*, 2022 IL App (1st) 201314-U, ¶ 28 (same).

¶ 47    We thus agree with *Nolan* that Rule 137 is limited to documents filed in court. As the February 27 email was not filed in court but instead was merely emailed to the judge and the parties, Rule 137 was not an appropriate vehicle for sanctions here.

¶ 48    In light of our ruling, we do not reach the question of whether the trial court's factual findings should be upheld. Indeed, we could not do so, for we no longer have a standard against which to compare those findings; all we have held here is that Rule 137 is *not* that standard.

¶ 49    That said, it would not be in the interests of justice to vacate this ruling outright without a remand. The allegations here concern serious ethical misconduct and fraudulent behavior, and our disposition is only on technical grounds, however important that technicality. And that is to say nothing of the other three instances of alleged fraud, on which the court did not conclusively rule given its disposition on the February 27 email.

¶ 50    So we remand for further proceedings. The court may consider other possible remedies regarding the February 27 email beyond Rule 137 and may consider the other three allegations of misconduct, as well. We leave to the circuit court whether additional fact finding is necessary.

¶ 51                                    CONCLUSON

¶ 52    We vacate the judgment of the circuit court and remand for further proceedings.

¶ 53    Vacated and remanded.