2021 IL App (2d) 200478
No. 2-20-0478
Opinion filed April 15, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| McHENRY TOWNSHIP, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20-CH-248 |
| | ) | |
| THE COUNTY OF McHENRY and JOSEPH | ) | |
| TIRIO, in His Official Capacity as the | ) | |
| McHenry County Clerk, | ) | Honorable |
| | ) | Kevin G. Costello, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Zenoff and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, McHenry Township, sued defendants, the County of McHenry and Joseph Tirio, in his official capacity as the McHenry County Clerk, for a writ of *mandamus* or mandatory injunctive relief, seeking to place on the township's November 2020 general election ballot a referendum proposition, initiated by the township's board of trustees, to dissolve the township. Less than 23 months earlier, another dissolution proposition, which was initiated by township electors, had appeared on the township's March 2020 primary ballot. With the exception of the proposed dissolution date, both propositions were identically worded. The trial court granted defendants' motion to dismiss the township's complaint, with prejudice, finding that (1) Tirio had

the authority to determine whether the second proposition violated the general election law, even though he would have looked past the face of the filings to determine whether it conformed with the law and the only other enforcement option—a private citizen suit—was not viable because it would be costly and chaotic, and (2) the second proposition was the same as the first, even though the two propositions contained different (statutorily prescribed) dissolution dates and, thus, because the second proposition was submitted within 23 months of the first, it could not be placed on the ballot (10 ILCS 5/28-7 (West Supp. 2019)). The township appeals. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3      In early 2020, the township's *electors* submitted the following referendum proposition, which was included on the township's March 2020 primary ballot:

> "Shall the McHenry Township together with any road districts wholly within the
> boundaries of McHenry Township, be dissolved on June 21, 2020[,] with all of the
> township and road district property, assets, personnel, obligations, and liabilities being
> transferred to McHenry County?
>
> Yes
>
> No"

The voters rejected the referendum proposition.

¶ 4      On June 12, 2020, the township's *board* approved a resolution to place the following referendum proposition on the November 2020 general election ballot:

> "Shall the McHenry Township together with any road districts wholly within the
> boundaries of McHenry Township, be dissolved on February 8, 2021[,] with all of the
> township and road district property, assets, personnel, obligations, and liabilities being
> transferred to McHenry County? All funds of the dissolved township and dissolved road

district shall be used solely on behalf of the residents of the geographic area with the boundaries of the dissolved township. Proceeds from the [s]ale of park land, cemetery land, buildings, or facilities after transfer to the county must be utilized for the sole benefit of the geographic area of the dissolved township. The McHenry County Board shall not extend a property tax levy that is greater than 90% of the property tax levy extended by the dissolved township or road district for the duties taken on by McHenry County—Yes—N[o]"

¶ 5    On June 29, 2020, the township submitted to Tirio's office a certification consisting of several documents, including: (1) proof of filing of a certification of the proposition to dissolve the township, (2) certification of resolution No. 1120068 concerning the resolution for a proposition to be placed on the ballot, and (3) a certification of ballot.

¶ 6    The following day, Tirio objected to the filings on the basis that (1) the proposition's language did not comply with the proper form to appear on the ballot, as set forth in section 24-30 of the Township Code (60 ILCS 1/24-30 (West Supp. 2019)) and (2) the proposition was the same referendum as that on the March 2020 ballot, in violation of the Election Code's prohibition of more than one referendum on "the same proposition" in any 23-month period (10 ILCS 5/28-7 (West Supp. 2019)).

¶ 7    On July 6, 2020, the township board approved the following revised proposition language:

"Shall the McHenry Township together with any road districts wholly within the boundaries of McHenry Township, be dissolved on February 8, 2021[,] with all of the township and road district property, assets, personnel, obligations, and liabilities being transferred to McHenry County?

Yes

No"

¶ 8     On July 6, 2020, the township delivered to Tirio the second certification, to be placed on the November 2020 ballot. The submitted documents included (1) proof of filing of a certification of the proposition to dissolve the township, (2) certificate of resolution No. 1120068 concerning the resolution for a proposition to be placed on the ballot, and (3) a certification of ballot.

¶ 9     Again, Tirio refused to place the referendum proposition on the November 2020 general election ballot. In a July 7, 2020, letter, Tirio explained that, although the revised language conformed to the statutory form for the ballot (see 60 ILCS 1/24-30(a) (West Supp. 2019)), pursuant to the Township Code and the Election Code (including section 28-5 of the Election Code (10 ILCS 5/28-5 (West 2018) (providing that, when "a local election official[1] *** is in receipt of *** a certification for the submission of a public question at an election at which the public question may not be placed on the ballot ***, such officer *** shall give notice of such prohibition")), the referendum proposition was prohibited because it did not comply with the Election Code's 23-month prohibition in that the same proposition to dissolve the township appeared on the March 2020 primary ballot, with the sole change being the dissolution effective date (7½ months later). In Tirio's opinion, "[o]therwise, an effective date change of even a single day would undermine the intent of and make Section [ ]28-7 completely ineffective."

¶ 10                         A. Township's Suit

---

[1] The clerk is the local election official of a county. See 10 ILCS 5/1-3(10) (West 2018) (a " '[l]ocal election official' " includes "the clerk or secretary of a unit of local government"). Counties and townships are units of local government. Ill. Const. 1970, art. VII, § 1.

¶ 11 On July 24, 2020, the township sued defendants for a writ of *mandamus* or mandatory injunctive relief, seeking to have Tirio place the referendum proposition on the November 2020 general election ballot. It argued that Tirio lacked the power to decide issues of content for propositions and that, even if he had such power, the two propositions at issue were not the same, because they called for dissolution in different years. The township argued that Tirio exceeded his authority as county clerk when he looked past the face of the filings.

¶ 12 On August 5, 2020, defendants moved to dismiss the township's complaint (735 ILCS 5/2-619 (West 2018)), arguing that the two propositions were the same, with the only difference being the dissolution effective date, which is dictated by section 24-20(b) of the Township Code. See 60 ILCS 1/24-20(b) (West Supp. 2019) (requiring that the dissolution date be at least 90 days after the date of the election at which the referendum is to be voted). The different effective dates, defendants asserted, did not render the two propositions different questions. They further asserted that, because referendum propositions to restructure government entities are limited to ballot placement only once in a 23-month period, Tirio was required to prohibit the township's July 2020 proposition from being printed on the November 2020 general election ballot. Pursuant to section 28-5 of the Election Code, he notified the township clerk of this prohibition. Defendants also maintained that Tirio had the duty to print ballots and is charged with knowledge of past ballot content. See 10 ILCS 5/16-5 (West 2018). As such, his determination that both propositions were identical required no investigation. Defendants also asserted that, here, there is no statutory provision for *voters* to object to the inclusion of the proposition and, thus, it is critical that the *county clerk* ensure that the proposition is in the proper form and allowed.

¶ 13 The township took the position that Tirio lacked the power to decide issues of content for propositions and that, even if he had such power, the two propositions were not the same.

¶ 14                                    B. Trial Court's Order

¶ 15    On August 24, 2020, the trial court granted defendants' motion and dismissed the township's complaint, with prejudice. The court found that the referendum proposition, on its face, conformed with statutory requirements and that Tirio would have looked outside the four corners of the filings to determine any alleged infirmities. However, the court noted that section 28-5 of the Election Code states that the local election official or authority, such as Tirio, is charged with notifying the entity that submitted the public question when it may *not* be placed on the ballot. The trial court determined that section 28-5 "clearly contemplates a determination by someone as to whether the public question violates any section of the Election Code, including [section] 28-7." The court queried, "if the local election official or authority is not charged with rendering that determination, who is? The logical answer is the same election official or authority. No provision in the Election Code suggests any other public official would have the standing or authority to do so." Strict enforcement of the position that the clerk's determination is limited to a facial examination of the document, the court further determined, "leads to an absurd result" and would never result in a determination by that official that the proposed question violates section 28-7. The court noted that sections 28-1 (10 ILCS 5/28-1 (West 2018)) and 28-5 make clear that public questions must comply with all provisions of the Election Code, including section 28-7. Preventing the election official from making a determination that a public question violates section 28-7 "would allow public questions violative of the Election Code to be placed on the ballot, clearly contrary to the provisions of Section 28-1."

¶ 16    The trial court distinguished case law upon which the township relied for the proposition that the clerk cannot look beyond the face of the filings. The court noted that the case law involved petitions, not a resolution such as here, and did not consider section 28-5 of the Election Code.

¶ 17 The trial court observed that section 28-4 provides an objection mechanism for referendums initiated by petitions *but not by resolution*. See *id.* § 28-4. Here, because the proposition was initiated by resolution, there is no mechanism in the Election Code whereby the public can object. "Thus, if the election official is not the gatekeeper, there is no gatekeeper and submitted public questions violative of Section 28-7 would be required to be placed on the ballot in clear contradiction to the intent of Sections 28-5 and 28-1 of the Election Code." The court noted that enforcement of section 28-7 would be "impractical, if not impossible."

¶ 18 Next, the trial court rejected the township's argument that section 28-7 could be enforced through a lawsuit brought by a private citizen (via a writ of *mandamus* or mandatory injunction) to remove the question from the ballot:

"Putting aside the practical burdens of such a lawsuit (*i.e.*[,] cost to the litigants, the significantly compromised time period for resolution)[,] such judicial 'kicking the can down the road' would violate the purpose of Section 28-5, which requires determination of all submitted public questions as to their conformity with the Election Code *before* their placement on the ballot. The mechanisms of that Section, specifically the requirement that the election official provide notice of a rejected question to the submitting party, allows that party to do exactly what was done here: file a lawsuit contesting that rejection so that a court can review same and determine whether the question should be placed on the ballot, all in a timely fashion. Tirio rubberstamping a submitted public question he believes to be violative of the Election Code on the assumption that a private citizen will bring a lawsuit to enforce the provisions of the Election Code after Tirio had placed the matter on the ballot would be shirking his duties under the Election Code. Furthermore, it would promote chaos. If such a post[-]ballot printing challenge was brought and successful, Tirio would

then have to print all new ballots and destroy the old ones—a potentially monumental and no doubt costly endeavor. The Court is disinclined to facilitate such an absurd scenario." (Emphasis added.)

¶ 19    The trial court rejected the township's argument that, even if Tirio had the discretion to determine that the referendum proposition violated section 28-7 of the Election Code, his decision was erroneous and an abuse of discretion because the proposition is not the same question that appeared on the March 2020 ballot. The court noted that the effective date is governed by statute (section 24-20 of the Township Code) and that, thus, by its very nature, the effective date for a proposed dissolution of a township will be different each time it is placed on the ballot. The court also noted that the statute does not require that an effective date be specified and instructs that referenda be in "substantially" the form appearing in the statute. Thus, the trial court concluded, the effective date was superfluous. In contrast, the court noted, section 24-20 requires a *petition* for referendum to include the effective dissolution date on the petition. The court found that the two propositions at issue were "the same." "The effective date is governed by statute and is not a question the public can vote on." A contrary reading of the statute, the court noted, would render section 28-7 unenforceable as to township dissolution referenda, "a result clearly contrary to both the Township [Code] and the Election Code." The court determined that the legislative intent of section 28-7 was "not to burden the public with the same referendum proposition every election cycle." It found that Tirio had the authority to reject the referendum proposition, which the township submitted pursuant to resolution, and that his determination that the proposition violated section 28-7 was correct. It dismissed the township's complaint, with prejudice. The township appeals.

¶ 20                                    II. ANALYSIS

¶ 21    The township argues that the trial court erred in dismissing its complaint. For the following reasons, we agree.

¶ 22                                    A. Mootness

¶ 23    We first consider whether the issue before us is moot, given that the November 2020 election has passed and that it is impossible to grant the relief—placement of the proposition on that ballot—that the township sought. The township argues that the public interest exception to the mootness doctrine applies to allow us to resolve the otherwise moot issue of placement of the proposition on the November 2020 ballot. It contends that the substantial public interest here relates to the powers of a county clerk in determining for himself or herself whether the voters could consider a ballot proposition. Defendants do not address mootness in their brief.

¶ 24    "An appeal is moot if no controversy exists or if events have occurred which foreclose the reviewing court from granting effectual relief to the complaining party." *In re Shelby R.*, 2013 IL 114994, ¶ 15. Although courts generally do not decide moot questions, there are several exceptions to this rule. *Id.*

> "One exception to the mootness doctrine allows a court to resolve an otherwise moot issue if the issue involves a substantial public interest. *** The criteria for application of the public interest exception are: (1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will recur. *In re A Minor*, 127 Ill. 2d 247, 257 (1989); *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622 (1952). A clear showing of each criterion is required to bring a case within the public interest exception. See *Kohan v. Rimland School for Autistic Children*, 102 Ill. App. 3d 524, 527 (1981)." *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 12.

¶ 25    The public interest exception applies where the court action is warranted due to the magnitude or immediacy of the interests at issue. *Shelby R.*, 2013 IL 114994, ¶ 16. The exception is narrowly construed. *Id.*

¶ 26    Turning to the first criterion—the public nature of the question—a question of election law is, "inherently, *** a matter of public concern." *Goodman v. Ward*, 241 Ill. 2d 398, 404-05 (2011); see also *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 208 (2008). This criterion is met here. We agree with the township that the question at issue here—whether a county clerk has the authority to determine whether the 23-month limit in section 28-7 of the Election Code applies when the only difference between two public questions is the dissolution date prescribed in article 24 of the Township Code—is a matter of public concern.

¶ 27    We also conclude that an authoritative determination of the issue is desirable for future guidance of public officers. Issues of first impression may be reviewed under the public interest exception. *Shelby R.*, 2013 IL 114994, ¶ 20. As the township notes, the question here relates to the application of the Election Code to a relatively new statute—article 24 of the Township Code (see Pub. Act 101-230 (eff. Aug. 9, 2019) (adding 60 ILCS 1/art. 24))—that allows for the consolidation of townships in the county. We believe that a ruling by this court will aid local election officials and lower courts in deciding the nature of a county clerk's duties under section 28-5 of the Election Code and township dissolution issues in McHenry County, thereby, "avoiding *** uncertainty in the electoral process." *Goodman*, 241 Ill. 2d at 405 (holding that exception applied to determine whether candidate seeking circuit judge office in a judicial subcircuit must be a resident of that subcircuit at the time he or she submitted a petition for nomination to the office; court ruling would aid election officials and lower courts in promptly deciding disputes, thereby avoiding uncertainty in elections by resolving eligibility questions before voters cast ballots); see also *Wisnasky-Bettorf*,

2012 IL 111253, ¶ 13 (applying exception in case concerning the filling of vacancies in the nomination of a public office and noting that issues were "long-standing and have not been addressed by courts or the legislature"); *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 395-96 (1994) (applying exception to review whether constitution barred a political party from filling a vacancy in nomination for judicial office by party resolution; noting that issues concerning the subject "are long-standing and have not been addressed by courts or the legislature"). Finally, we agree with the township that this question is likely to recur. The fact that there were two attempts to dissolve the township within one year of the enactment of article 24 of the Township Code is evidence of this likelihood. Thus, we choose to decide the substantive issues in this appeal.

¶ 28                                    B. Dismissal of Township's Complaint

¶ 29      When ruling on a motion to dismiss under section 2-619 of the Code of Civil Procedure, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24. As a result, a motion to dismiss pursuant to section 2-619 should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. We review *de novo* a dismissal pursuant to section 2-619. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004).

¶ 30      In addition, we review *de novo* questions of statutory construction. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008). "The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature." *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). The language of the statute is the best indication of the legislature's intent and therefore must be given its plain and ordinary meaning. *Id.* at 553. If the language is unambiguous,

the statute must be given effect without the use of other aids of construction. *Id.* We cannot "depart from the plain language of the statute by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Id.* at 567-68. A court should not consider words and phrases in isolation but instead should interpret each word and phrase in light of the statute as a whole. *Id.* at 553. "Each word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous." *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26. We interpret statutes with the presumption that the legislature did not intend to create "absurd, inconvenient, or unjust results." *In re Application of the County Treasurer & ex officio County Collector*, 2013 IL App (1st) 130103, ¶ 9.

¶ 31     In its complaint, the township sought a writ of *mandamus* to have Tirio place the July 2020 referendum proposition on the November 2020 ballot. Where a public official has failed or refused to comply with requirements imposed by statute, the court may compel the official to comply by means of a writ of *mandamus*, provided the requirements for the writ have been satisfied. *Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 132 (1997). An extraordinary remedy, *mandamus* enforces the performance of a public officer's official nondiscretionary duties as a matter of right. *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007). For *mandamus* to issue, a plaintiff must establish material facts that demonstrate (1) an unequivocal right to the requested relief, (2) an unequivocal duty on the defendant to act, and (3) the defendant's unequivocal authority to comply with an order granting *mandamus* relief. *Id.* at 433-34. *Mandamus* cannot be used, however, to compel a public official to perform an act that requires the exercise of his or her discretion. See, *e.g.*, *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17 ("A writ of *mandamus* is appropriate when used to compel compliance with mandatory legal standards but not when the act in question involves the exercise of a public officer's discretion.").

¶ 32                             1. Constitutional and Statutory Framework

¶ 33    The Illinois Constitution states that the legislature "shall provide by law for the formation of townships in any county when approved by countywide referendum. Townships may be *** dissolved *** when approved by referendum in each township affected." Ill. Const. 1970, art. VII, § 5. Article 24 of the Township Code, enacted in 2019, addresses the dissolution of townships in McHenry County, and the legislative intent of the article is to "further the intent of Section 5 of Article VII of the Illinois Constitution." Pub. Act 101-230 (eff. Aug. 9, 2019) (adding 60 ILCS 1/art. 24). Further, the public act provides that

> "[t]ransferring the powers and duties of one or more dissolved McHenry County townships into the county, as the supervising unit of local government within which the township or townships are situated, will reduce the overall number of local governmental units within our State. This reduction is declared to be a strong goal of Illinois public policy." *Id.*

¶ 34    Section 24-15 of the Township Code states that *the board of trustees* of any McHenry County township may, by *resolution*, "submit a proposition to dissolve the township to the electors of that township at the election next following in accordance with the general election law.[2] The ballot shall be as provided for in Section 24-30." 60 ILCS 1/24-15 (West Supp. 2019).

¶ 35    Section 24-30(a), in turn, states that, "[s]ubject to the requirements of Section 16-7 of the Election Code, the referendum described in Section 24-25[3] shall be in substantially the following form on the ballot:

---

[2] The Election Code is "the general election law" of Illinois. 10 ILCS 5/1-1 (West 2018).

[3] Section 24-25 addresses *petitions*, not *resolutions*, and provides that "[a] petition that meets the requirements of Section 24-20 shall be placed on the ballot in the form provided for in

Shall the (dissolving township), together with any road districts wholly within the boundaries of (dissolving township), be dissolved on (date of dissolution) with all of the township and road district property, assets, personnel, obligations, and liabilities being transferred to McHenry County?

YES

NO" *Id.* § 24-30(a).

¶ 36    Thus, as it relates to *resolutions* by a township's board of trustees, article 24 provides merely that (1) a board may submit to the electors a resolution to dissolve a township pursuant to the Election Code and (2) the ballot must meet section 24-30's requirements, which, in turn, state that, subject to the requirements of section 16-7 of the Election Code, the referendum shall be in the prescribed form. Here, the township's board approved a resolution to dissolve the township and, after revising the language, submitted to Tirio a proposition that conformed to section 24-30(a)'s form. Section 16-7 of the Election Code states, in relevant part, that,

"[w]henever a public question is to be submitted to be voted upon and has been *initiated and certified in accordance with Article 28 of this Code*, the election authorities[4] to whom the question is certified *shall print* the question on the ballot for the proper election, and *shall cause it to be submitted in the proper precincts* to those electors entitled by reason of their residency to vote on such question." (Emphases added.) 10 ILCS 5/16-7 (West 2018).

Section 24-30 at the election next following." 60 ILCS 1/24-25 (West Supp. 2019).

[4] An " '[e]lection authority' means a county clerk or a Board of Election Commissioners." 10 ILCS 5/1-3(8) (West 2018).

The county clerk is in charge of printing all ballots, including referenda, and furnishing them to the judges of election. *Id.* § 16-5.

¶ 37    The relevant provisions in article 28 of the Election Code that address the initiation and certification of public questions are as follows. Section 28-7 of the Election Code addresses constitutionally required referenda involving units of local government. It provides that, "*[e]xcept as provided in Article 24 of the Township Code,*" in cases where article VII of the Constitution "authorizes any action to be taken [(*e.g.*, dissolution of a township)] by or with respect to any unit of local government, as defined in Section 1 of Article VII of the Constitution [*e.g.*, a township], by or subject to approval by referendum, any such public question shall be initiated in accordance with this Section." 10 ILCS 5/28-7 (West Supp. 2019); see also Ill. Const. 1970, art. VII, § 1. The question "may be initiated by the governing body of the unit of local government by resolution or *** petition ***, requesting the submission of the proposal for such action to the voters of the governmental unit at a regular election." 10 ILCS 5/28-7 (West Supp. 2019). Section 28-7 "is intended to provide a method of submission to referendum in all cases of proposals for actions which are authorized by Article VII of the Constitution by or subject to approval by referendum and *supersedes any conflicting statutory provisions except those contained in *** Article 24 of the Township Code*." (Emphasis added.) *Id.* (As noted above, as to resolutions, article 24 provides merely that a board may submit a resolution to dissolve a township pursuant to the Election Code, that the ballot must substantially be in the prescribed form, and that the ballot is subject to section 16-7 of the Election Code, which, in turn, states that, when the public question has been initiated and certified pursuant to article 28 of the Election Code, the election authority to whom it is certified must print the question on the ballot and shall cause it to be submitted to the precincts.) Finally, as relevant here, section 28-7 provides that "[r]eferenda provided for in this Section may

not be held more than once in any 23-month period *on the same proposition*." (Emphasis added.) *Id.*

¶ 38    Section 28-5 states that, no "less than 68 days before a regularly scheduled election, each local election official *shall certify* the public questions to be submitted to the voters of or within his [or her] political subdivision at that election which have been initiated by *** action of the governing board of his [or her] political subdivision." (Emphasis added.) 10 ILCS 5/28-5 (West 2018). As relevant here, the certification includes the form of the public question, the date on which it was adopted by a resolution or ordinance by a governing body, and a certified copy of any political subdivision resolution or ordinance requiring the submission of the public question. *Id.* "Local election officials and circuit court clerks," in turn, "*shall make their certifications*, as required by this Section, to each election authority having jurisdiction over any of the territory of the respective political subdivision in which the public question is to be submitted to referendum." (Emphasis added.) *Id.* As is also relevant here, section 28-5 also provides that, when "a local election official *** is in receipt of *** a certification for the submission of a public question at an election at which the public question may *not* be placed on the ballot ***, such officer *** *shall give notice of such prohibition*" by, "in the case of a certificate from a local election authority, to such local election authority, who shall thereupon *** notify the governing board which adopted the initiating resolution or ordinance." (Emphases added.) *Id.*

¶ 39    Finally, the Election Code contains a mechanism for objections to *petitions* to submit public questions to a referendum (see *id.* § 10-8), but it contains no such mechanism for objections to *resolutions or ordinances* initiating a public question.

¶ 40                                  2. Tirio's Powers

¶ 41    The township maintains that this case is analogous to *People ex rel. Giese v. Dillon*, 266 Ill. 272 (1914), where residents submitted petitions to have the town clerk put on the ballot the question whether the town should become "anti-saloon territory". The town clerk refused to do so, because he determined that the signatures on the petition were neither of legal voters nor given in person and because the sworn statements were neither signed by town residents nor sworn to. The residents sought a writ of *mandamus* to compel the clerk to place the question on the ballot. The supreme court affirmed the grant of *mandamus* relief, holding that, where the petition on its face appears to comply with statutory requirements, the clerk may not look beyond the face of the petition to determine whether it complies; he or she must submit the question to the voters. *Id.* at 275-76. The court noted that the validity (as contrasted with the number) of signatures and the authority of officers cannot be examined from the face of the complaint, the petition was in apparent conformity with the law, and the clerk was obligated to submit the question to the voters. *Id.* The supreme court noted that the town clerk was a ministerial officer with no discretionary power and that his duty was to examine the face of the petition to determine if it complied with statutory requirements. *Id.*

¶ 42    The township also points to a subsequent case that illustrates the application of *Dillon*. In *North v. Hinkle*, 295 Ill. App. 3d 84 (1998), the plaintiffs had filed nominating papers, seeking to have their names placed on the ballot in a municipal election, but they failed to include a statement of candidacy, as required by section 10-5 of the Election Code (10 ILCS 5/10-15 (West 1996) (addressing consolidated and nonpartisan elections and certification of candidates; providing that a "local election official with whom certificates of nomination or nominating petitions have been filed shall certify *** the names of all candidates entitled to be printed on the ballot")). The city clerk refused to certify their names for the ballot, and the plaintiffs sought a writ of *mandamus* to

compel her to certify their names. The reviewing court affirmed the denial of their request, noting that the plaintiffs had conceded that their nominating papers were not in "apparent conformity" with the election law, as required by section 10-8 of the Election Code (*id.* § 10-8), and it noted that whether the nominating papers included statements of candidacy can be determined from the face of the papers themselves and that the clerk was "empowered to make that ministerial determination." *North*, 295 Ill. App. 3d at 88-89. See also *Haymore v. Orr*, 385 Ill. App. 3d 915, 917-19 (2008) (finding *Dillon* controlling and reversing grant of *mandamus*; holding that village clerk had authority to withdraw certification of a binding referendum question for lack of sufficient signatures to put the question on the ballot; election law provided that questions were to be placed on ballot if they were in "apparent conformity" with the law (10 ILCS 5/10-8 (West 2004) (addressing objections to nomination papers, public question *petitions*, and certain constitutional amendments), and, because the petition was facially deficient for lack of sufficient signatures, the clerk had authority to withdraw her previous certification of question for the ballot).

¶ 43    Here, the township argues that Tirio, like the clerk in *Dillon*, impermissibly looked beyond the face of the filings. In both cases, the decision concerning a facial conformity was based on an extrinsic fact: in *Dillon*, it was the actual residency status of the signatories to the petition, and, here, it was the March 2020 ballot question. The township argues that defendants have  failed to cite any authority that Tirio must/can look beyond the face of the filings. The township also asserts that the proposition here arose pursuant to article 24 of the Township Code, not the constitution, and that, therefore, "the 23-month rule is not appropriate to be ruled upon." As to the absence of a statutory provision allowing voters to object to ballot placement of a public question arising from a resolution, the township contends that voters have remedies; specifically, they (1) always have the opportunity to vote on the measure at the ballot box, (2) always have the right to vote out of

office those who advance propositions not to their liking, and (3) possess the ability to create a new township or road district if one was dissolved against their liking. Finally, the township asserts that our legal system does not provide for voter intervention at every stage of the legislative process; voters have input at the ballot box.

¶ 44     Defendants respond that Tirio is in charge of printing the ballots for all elections and, therefore, is charged with knowledge of the content of previous ballots, including referendum propositions, and cannot ignore the direct knowledge inuring from his duty to print ballots. To determine that the two propositions at issue here are the same did not, they assert, require investigation beyond facial review of the propositions. Defendants further argue that, even if imputed knowledge is not sufficient, there is statutory authority for a county clerk to determine and advise local officials that a referendum question is prohibited. They note that such questions may be placed on the ballot by either signed petitions or resolutions/ordinances of local governing boards of political subdivisions. See 10 ILCS 5/28-2(a), (c) (West 2018) (providing that petitions must be filed not less than 92 days before the election and that resolutions/ordinances be adopted not less than 79 days before a regular election); but see 60 ILCS 1/24-20(a) (West Supp. 2019) (referenda petitions to dissolve a McHenry township must be filed no less than 122 days prior to the election). *Petitions* that generate referenda ballot placement are subject to the same objection procedures that apply to candidate nominating petitions (see *id.* § 28-4), however, these same objection procedures do not apply to *resolutions or ordinances* to place referendum propositions on the ballot. Instead, section 28-5 of the Election Code provides the *clerk* with the ability to determine if and when certain propositions are prohibited from ballot placement and sets forth the duty to advise local election officials of such prohibition.

¶ 45 Defendants take issue with the case law upon which the township relies. They note that *Dillon* involved a petition, with citizens' signatures, to place an anti-saloon referendum question on the ballot and that the town clerk had investigated registration status to determine individuals' eligibility to sign the petition. *North*, they note, involved signed nominating petitions to place on the ballot municipal candidates who were not in apparent conformity because they failed to file their statements of candidacy. Neither case involved, as here, a governing board resolution to propose a ballot referendum proposition. Furthermore, defendants note, section 10-8 of the Election Code, which the township's case law addresses, concerns the ability to determine apparent conformity of *nomination papers and petitions* to submit public questions, not governing body *resolutions* to submit referendum propositions. Finally, they point out that the different treatment of referenda petitions and referenda resolutions extends to the statutory deadlines that apply. Resolutions must be adopted 79 days prior to the election, whereas signed petitions in McHenry County must be filed no less than 122 days prior to the election (60 ILCS 1/24-20(a) (West Supp. 2019)). The earlier deadline for signed petitions, they contend, allows ample time for potential objection/hearing procedures, but this same opportunity is *not* made available for governing body resolutions. Thus, defendants argue, the only recourse for a governing body's improper ballot-question attempts is section 28-5 of the Election Code, under which the election authority assesses submissions, determines their validity, and notifies local officials. Here, where there is no statutory provision for voters to object to the inclusion of the public question on the ballot, it is important, they assert, that the election authority ensure that the referenda question is in the proper form and allowed.

¶ 46 We conclude that the trial court erred in dismissing the township's complaint. Tirio's determination that the township's July 2020 proposition was prohibited because it was identical to

one submitted less than 23 months earlier (in violation of section 28-7 of the Election Code) necessarily required him to look beyond the face of the township's July 2020 filings. *Dillon* is clear that a ministerial officer such as Tirio may not look beyond the face of the filings to determine whether the proposition complies with the law. *Dillon*, 266 Ill. at 275-76. From the face of the July 2020 filings, Tirio could not have known that a proposition with identical wording (except for the dissolution date) was presented to the voters in March 2020.

¶ 47    This case does not present a scenario such as that, for example, in *Haymore*, where the court held that the clerk had the power to withdraw a certification, because the petition was facially deficient for lack of a sufficient number of signatures. *Haymore*, 385 Ill. App. 3d at 917-19. Nor is it like *Hinkle*, where the court affirmed the denial of *mandamus* relief, because whether candidate nominating papers included a statement of candidacy could be determined from the face of the filings and the clerk had the power to make such a ministerial determination. *Hinkle*, 295 Ill. App. 3d at 88-89. Counting signatures and ascertaining whether required documents were filed are clearly ministerial tasks within the scope of a clerk's duties. Determining whether a proposition had previously appeared on a township ballot within a statutorily prescribed timeframe, which necessarily requires looking beyond the four corners of the filings, is not a ministerial task, as it constitutes an assessment of the content of the filings.

¶ 48    We reject defendants' argument that Tirio, who is in charge of printing ballots (10 ILCS 5/16-7 (West 2018)), was charged with knowledge of the content of prior ballots. He was not charged with knowledge of prior township ballots. Again, this inquiry would have required an investigation on his part that necessarily required looking beyond the face of the filings. Stated differently, Tirio would necessarily have evaluated the content of the township's proposition, an exercise beyond his ministerial powers. His obligation to send notice to public officials of public

questions that may not be placed on the ballot does not, in our view, obligate him to evaluate the content of the proposition. Such an act extends beyond his ministerial powers. We cannot infer from the legislature's grant of power to Tirio to print the ballots anything more than that narrow ministerial task. Had the legislature intended that a county clerk may use his or her knowledge of past ballots to ascertain whether a question submitted for the next election runs afoul of section 28-7's 23-month prohibition, we believe that it would have made such power clear. In the absence of such clarity, we believe that we cannot depart from *Dillon* or read into the statute authority that is not there. Further, we believe that our holding is consistent with the legislature's express policy goal of reducing the number of local governmental units in this State. Pub. Act 101-230 (eff. Aug. 9, 2019).

¶ 49     The trial court noted that a holding in the township's favor would result in the scenario where the only remedy for violations of section 28-7 would be a private citizen suit for *mandamus* or mandatory injunction, which would promote chaos. We are sympathetic to such concerns and are aware of the financial impact such suits could have on governmental units potentially resulting in the reprinting of ballots. However, we cannot ignore that Tirio is a ministerial officer. We further note that, when faced with a public question that he or she believes may not be placed on the ballot, a county clerk has the option of obtaining a judicial determination of the question. Thus, a citizen suit is not the only available enforcement option.

¶ 50     In summary, the trial court erred in dismissing the township's complaint. Having determined that Tirio lacked the authority to reject the township's proposition on the basis that it did not comply with section 28-7's 23-month prohibition, we need not reach the issue whether the two propositions were the same.

¶ 51                                III. CONCLUSION

¶ 52 For the reasons stated, the judgment of the circuit court of McHenry County is reversed, and the cause is remanded for further proceedings.

¶ 53 Reversed and remanded.

**No. 2-20-0478**

| | |
|---|---|
| **Cite as:** | *McHenry Township v. County of McHenry*, 2021 IL App (2d) 200478 |
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 20-CH-248; the Hon. Kevin G. Costello, Judge, presiding. |
| **Attorneys for Appellant:** | Robert T. Hanlon, of Law Offices of Robert T. Hanlon & Associates, P.C., of Woodstock for appellant. |
| **Attorneys for Appellee:** | Patrick D. Kenneally, State's Attorney, of Woodstock (Norman D. Vinton and Carla N. Wyckoff, Assistant State's Attorneys, of counsel), for appellees. |