2023 IL App (1st) 221149-U

SIXTH DIVISION
July 14, 2023

No. 1-22-1149

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* PARENTAGE OF KENNETH N. THOMPSON JR., a Minor, | ) ) ) | Appeal from the Circuit Court of Cook County, |
| (STEPHANIE GOLLIDAY, | ) ) | |
| Petitioner-Appellee, | ) ) | No. 1990 D 67916 |
| v. | ) ) ) | Honorable |
| KENNETH N. THOMPSON SR., | ) ) | William Stewart Boyd, Judge Presiding. |
| Respondent-Appellant). | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices C.A. Walker and Tailor concurred in the judgment.

**ORDER**

¶ 1    *Held*: Order of the circuit court finding respondent in indirect civil contempt for failure to pay child support is affirmed. Respondent did not carry his burden of showing that the circuit court abused its discretion.

¶ 2    This case is before us on appeal from a finding of indirect civil contempt against respondent Kenneth Thompson Sr. (Mr. Thompson) for his failure to pay child support to petitioner Stephanie Golliday with respect to their child Kenneth Thompson Jr. (Kenneth Jr.). On appeal, Mr. Thompson, *pro se*, argues that the circuit court erred by finding him in contempt. For the following

reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    This is the second time Mr. Thompson has appealed from a finding of indirect civil contempt in the same parentage case. The history of this case is long, and we discussed it in detail in our prior order. See *In re Parentage of Thompson*, 2019 IL App (1st) 180663-U. We will briefly discuss the facts to the extent necessary for an understanding of the issues raised in this appeal.

¶ 5    On March 1, 1991, Mr. Thompson was found to be the "natural father" of Kenneth Jr. and was ordered to pay $250 per month in child support to the child's mother, Ms. Golliday.

¶ 6    On December 2, 1999, in two orders, the circuit court entered a judgment in favor of Ms. Golliday in the amount of $24,250 for child support arrearage and $4178.52 for medical insurance premium payment arrearage. The court also found Mr. Thompson in contempt for his failure to pay. Going forward, Mr. Thompson was ordered to pay $250 per month in child support plus an additional $39.42 per month for medical insurance.

¶ 7    On May 12, 2017, Ms. Golliday filed a petition for adjudication of indirect civil contempt, in which she argued that, despite the December 1999 orders, Mr. Thompson had "willfully and purposely failed" to contribute child support or help pay for medical insurance for Kenneth Jr.

¶ 8    On March 7, 2018, the circuit court entered an order finding that Mr. Thompson "willfully and contumaciously violated the Uniform Order of Support dated December 2, 1999," by "failing to pay [Ms. Golliday] child support" and that Mr. Thompson owed Ms. Golliday $129,181.83. However, in "an effort to come to an affordable, realistic, and accountable payment plan for the parties," the court made certain adjustments. The court found Mr. Thompson owed Ms. Golliday a total of $65,000 ($47,195 for child support and $17,805 in attorney fees and costs) and ordered

him to pay Ms. Golliday $300 per month until further order of the court.

¶ 9    The following day, the court entered an order of adjudication of indirect civil contempt against Mr. Thompson. Mr. Thompson appealed that order, and we affirmed it on appeal. *Thompson*, 2019 IL App (1st) 180663-U, ¶ 2.

¶ 10    On July 27, 2018, Mr. Thompson filed a motion to modify the child support arrearage payments due to physical disability and unemployment. Mr. Thompson explained in the motion that he had been in a motorcycle accident in June 1992 that required 117 stitches to reattach his partially severed foot. Mr. Thompson said that scar tissue and nerve damage to his foot had immobilized him, that he could only stand for two hours maximum, and that he had applied for and received a variety of government benefits and had a pending application for disability SSI (supplemental security income) through the Social Security Administration. Mr. Thompson asked that the child support arrearage be modified retroactive to June 1, 2018. On September 18, 2018, Mr. Thompson amended his motion to add that his first surgery—an "Endovenous Radio Frequency Ablation Phlebectomy"—was scheduled for October 18, 2018.

¶ 11    On November 24, 2020, Mr. Thompson asked for leave to file another motion to modify his child support arrearage payments due to a change in financial circumstances because of the COVID-19 pandemic. Mr. Thompson explained that he had custody of his minor child from another relationship, he had been homeschooling his minor child since "[o]n or around January 2020" when her school closed due to the pandemic, and thus he had been unable to work. He asked for his child support arrearage payments to be reduced to $75, retroactive to December 2019. On December 18, 2020, it appears Mr. Thompson filed a request for leave to file a modification motion identical to the November 2020 motion.

¶ 12    On January 27, 2021, the court entered an order directing Mr. Thompson to "tender any and all financials in support of the full accounting received by [Mr. Thompson] from the State Disbursement Unit including but not limited to any and all bank statements, unemployment statements, disability payments, social security statements, and pay statements."

¶ 13    On March 3, 2021, the court entered an order reducing Mr. Thompson's child support arrearage payments to $100 per month through October 1, 2021, "to enable [Mr. Thompson] the ability to secure a loan on his mortgage" and continued the case until October 5, 2021, for status. On November 24, 2021, the court permanently reduced Mr. Thompson's child support arrearage payments to $100 "until such arrearage and interest is paid in full."

¶ 14    On February 4, 2022, Ms. Golliday filed a petition for adjudication of indirect civil contempt against Mr. Thompson. According to her, Mr. Thompson had "continually failed to make the $300.00 payment for child support" since March 7, 2018, and had similarly "failed to pay the $100.00 per month toward his arrearage amount" since March 3, 2021, "despite the fact that it was greatly reduced from his original payment and despite the large amount [Mr. Thompson] owe[d] in arrearages and interest." Ms. Golliday argued that Mr. Thompson owed $9725 in arrearages from March 7, 2018, to March 3, 2021, not including interest, and had paid only $900 of the $1200 he owed since March 3, 2021. Ms. Golliday asked that, among other things, the court enter a rule to show cause why Mr. Thompson should not be held in indirect civil contempt for his willful refusal to comply with the court's orders of March 7, 2018, and March 3, 2021, impose sanctions, and issue a body attachment against Mr. Thompson with a bond set in the amount of $11,000.

¶ 15    On April 1, 2022, Mr. Thompson responded to Ms. Golliday's contempt petition, arguing that his failure to pay the $300 per month after March 7, 2018, was neither willful nor

contumacious but was instead based on his disability, his having legal custody of his other minor child, and his needing to stay home all day with that child for 18 months when her school closed. Mr. Thompson argued that he continued "to make payments every month and never missed a monthly payment to [Ms. Golliday] but those reduced payments (unilateral modification) were the amounts [he] could afford based on [his] financial ability."

¶ 16    Following a hearing on Ms. Golliday's petition for adjudication of indirect civil contempt—at which Ms. Golliday was "present through counsel" and Mr. Thompson appeared *pro se*—on July 8, 2022, the circuit court found Mr. Thompson to be in indirect civil contempt for his failure to pay Ms. Golliday child support pursuant to the March 2018 and March 2021 orders. In its written order, the court directed Mr. Thompson to pay (1) an extra $25 per month to Ms. Golliday for the outstanding child support arrearages he owed her from March 7, 2018, to March 3, 2021, pursuant to the March 2018 order, until the outstanding total of $9725 was paid in full, and (2) a one-time payment of $50 to Ms. Golliday before July 11, 2022, for the outstanding child support arrearages he owed her from March 3, 2021, to July 1, 2022, pursuant to the March 2021 order.

¶ 17    Consistent with the above order, the circuit court also entered two separate orders of adjudication of indirect civil contempt against Mr. Thompson—one on July 8, 2022, and one on July 14, 2022—for his failure to pay child support in compliance with the March 2018 and March 2021 orders. Both were form orders prepared by Ms. Golliday's counsel, on which counsel had checked boxes indicating that Ms. Golliday had appeared in person and with counsel. In both orders, the court found—according to more checked boxes—that Mr. Thompson had "not given any legally sufficient reasons for failure to comply with said order," that his failure to comply was

"willful and contumacious," and that he had "defeated and impaired the rights and interests of" Ms. Golliday as well as the court "in its administration of justice." Mr. Thompson was again ordered to pay Ms. Golliday an extra $25 per month until the $9725 was paid in full and, separately, $50 before July 11, 2022.

¶ 18    This appeal followed.

¶ 19                                II. JURISDICTION

¶ 20    The circuit court entered its adjudications of indirect civil contempt against Mr. Thompson on July 8 and 14, 2022, and Mr. Thompson timely filed his notice of appeal from those orders on July 25, 2022. We have jurisdiction pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. March 8, 2016), governing the appeal of an order finding a person in contempt "which imposes a monetary or other penalty."

¶ 21                                III. ANALYSIS

¶ 22    On appeal, Mr. Thompson argues that the circuit court's contempt finding was in error. As Ms. Golliday filed no response brief, we have considered the instant appeal on Mr. Thompson's brief only, pursuant to the principles of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (allowing consideration of an appeal based on the appellant's brief only when the record is simple and the purported errors can be considered without additional briefing).

¶ 23    Contempt proceedings are *sui generis*. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 48 (1990). "The purpose of civil contempt is to coerce compliance with the order of a court." *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 971 (2004). "The failure to make support payments as required by court orders is *prima facie* evidence of contempt." *In re Marriage of Sharp*, 369 Ill.

App. 3d 271, 279 (2006). "The burden then rests on the alleged contemnor to show that his noncompliance was not willful or contumacious and that he has a valid excuse for his failure to pay." *Id.* "Whether a party is guilty of contempt is within the discretion of the trial court, and we will not disturb its decision on appeal unless there has been an abuse of discretion." *Id.* "An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Moore*, 307 Ill. App. 3d 1041, 1043 (1999).

¶ 24 On this record, Mr. Thompson has failed to show that the circuit court abused its discretion by finding him in contempt. Mr. Thompson argues that he demonstrated compelling cause or justification for his inability to comply with the March 2018 order. However, no transcript of the hearing or bystander's report has been provided to this court from which we can discern whether this is so or whether the circuit court acted without justification.

¶ 25 As our supreme court has made clear:

> "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

Here, we do not have a record of the hearing and thus we must presume the circuit court's contempt rulings were proper.

¶ 26 Mr. Thompson argues he has demonstrated that the contempt finding was improper because the circuit court itself made a finding that he was unable to comply with the March 2018 order's

requirement that he pay $300 per month. According to Mr. Thompson, when the circuit court modified his child support payment in March 2021—reducing it to $100 per month—the court determined that Mr. Thompson did not have the ability to comply with the March 2018 order. Although the court found in the March 2021 order that the appropriate child support for Mr. Thompson to pay *going forward* was $100 per month, the court made no finding in its order as to Mr. Thompson's ability to pay $300 per month prior to March 2021. The court also did not make the modification of child support payments retroactive, although Mr. Thompson requested this relief. When the circuit court found Mr. Thompson in contempt for failing to pay the $300 per month from March 2018 to March 2021 in addition to finding him in contempt for the period after March 2021, it *explicitly* found that Mr. Thompson *had* the ability to pay the $300 per month until that amount was reduced in March 2021. Thus, there is no finding by the circuit court that supports Mr. Thompson's argument on appeal.

¶ 27 Mr. Thompson also argues that Ms. Golliday was barred from pursuing the adjudication of contempt against him by both the collateral estoppel doctrine and the law-of-the-case doctrine. Collateral estoppel applies when a party is involved "in two separate and consecutive cases" and "some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389-90 (2001). And, "[g]enerally, the law of the case doctrine bars relitigation of an issue previously decided in the same case." *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). Both arguments are based on Mr. Thompson's false conclusion that the circuit court found that he was unable to comply with the March 2018 order. But no such finding was made, and these arguments accordingly fail.

¶ 28    Finally, Mr. Thompson argues that his rights to due process and confrontation were violated because he was not able to cross-examine Ms. Golliday at the contempt hearing. The record does not support this argument. First, it is unclear from the July 2022 court orders whether Ms. Golliday was present at the hearing—the court said in its written order of July 8 that Ms. Golliday was "present through counsel" while the adjudication orders suggest that Ms. Golliday was present in person as well as with counsel. Even if we accept Mr. Thompson's argument that Ms. Golliday was not present for cross-examination, there is nothing in the record that demonstrates Mr. Thompson made any request for or effort to ensure Ms. Golliday's presence or to call her as a witness. Without a complete record, we must presume the circuit court acted in conformity with the law. *Foutch*, 99 Ill. 2d at 391-92.

¶ 29                              IV. CONCLUSION

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 31    Affirmed.