NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240623-U

NO. 4-24-0623

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 5, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| TAYSHAUN D. ANDERSON, | ) | No. 24CF287 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Kording, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:  By denying pretrial release, the circuit court did not abuse its discretion.

¶ 2        Defendant, Tayshaun D. Anderson, appeals from an order in which the McLean County circuit court granted the State's petition to deny pretrial release. Because we find no abuse of discretion in the denial, we affirm the circuit court's judgment.

¶ 3                I. BACKGROUND

¶ 4        On March 21, 2024, the State charged defendant with two counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2022)), which were Class 4 felonies (*id.* § 24-1.6(d)(1)), and one count of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2022)), which was a Class 2 felony (*id.* § 4-103(b)).

¶ 5        Simultaneously, on March 21, 2024, the State petitioned for the denial of pretrial release. The petition was pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/art. 110 (West 2022)), as recently amended by Public Act 101-652 (eff. Jan. 1, 2023). The petition claimed that defendant was eligible for pretrial detention under subsections (a)(1) and (a)(6) of section 110-6.1 of the Code (725 ILCS 5/110-6.1(a)(1), (6) (West 2022)). The petition further claimed that releasing defendant before trial would "pose[ ] a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case."

¶ 6        On March 22, 2024, the circuit court held a hearing on the State's petition for the denial of pretrial release. At the hearing, the prosecutor made a proffer, which tended to prove the following.

¶ 7        On March 20, 2024, at about 4 p.m., residents of an apartment complex at 710 Orlando Avenue in Normal, Illinois, reported to the police that a gray Hyundai sport utility vehicle (SUV), occupied by four or five persons, had traveled through the parking lot of the complex and that some of the occupants of the Hyundai had brandished firearms out of its open windows. A witness recognized one of the occupants of the Hyundai as a 14-year-old with the initials J.W., who was a resident of Bloomington, Illinois. Police officers went to J.W.'s residence and saw the Hyundai parked by the residence.

¶ 8        As the police pulled up, J.W. got out of the Hyundai and entered the residence, and two men who had been standing by the Hyundai began walking away. Police officers stopped these two men, one of whom they afterward identified as defendant, a Champaign resident. At first, defendant was noncompliant, disobeying a police officer's commands to remove his hand from inside his hoodie and to get on the ground. Only by aiming his pistol at defendant and pulling him to the ground did the police officer obtain defendant's compliance. In patting down defendant, a police officer discovered an object that felt like a firearm. He asked defendant what the object was,

and defendant answered that it was a phone charger before admitting it was a firearm. Defendant was carrying, concealed on his person, an uncased, loaded 9-millimeter pistol. The ammunition in the pistol was stamped as 9-millimeter Luger, type C.

¶ 9    The rear passenger window of the Hyundai was shattered, and a blanket was draped over the window. The steering column had been removed, and a screwdriver and some USB cords were inside the Hyundai. The Hyundai, as it turned out, belonged to Jordan Downs, and the Hyundai had been  reported as stolen. Although, in his statement to the police, defendant initially denied driving the Hyundai, J.W. told the police that defendant had in fact been the driver.

¶ 10    Earlier that day, as the McLean County Sheriff's Department learned from the Champaign police department, the Hyundai was involved in a shooting in Champaign, Illinois. At the scene of the shooting, Champaign police officers had found spent shells, which were stamped as 9-millimeter Luger, type C. Defendant—who lacked a firearm owner's identification card and a concealed carry license—admitted firing the pistol in the Champaign shooting. He further told the police that, after the Champaign shooting, as he was traveling in the Hyundai from Champaign to Bloomington, he accidentally discharged the pistol, grazing himself. He admitted he was in the Hyundai at 710 Orlando Avenue as passengers displayed guns outside the windows.

¶ 11    J.W. explained to the police that he, defendant, and others had gone to 710 Orlando Avenue looking for a particular individual who lived there and who they thought was responsible for a shooting a few weeks earlier. J.W. said they had been tracking this person's location by using Snapchat and that, upon failing to find him at the apartment complex, they had driven away.

¶ 12    In addition to interviewing the suspects, the police interviewed two witnesses at 710 Orlando Avenue. According to the first witness, a loud noise had prompted the witness to look outside an apartment window. A vehicle was going by, and a person was sitting on the window

ledge of a back passenger door of the vehicle, hanging out of the open window and brandishing a firearm. Someone else was doing the same through the front passenger window, hanging out of the window and waving a firearm. This witness recognized a red-shirted occupant of the vehicle as J.W.

¶ 13    The other witness told the police that, upon returning home from school, she was outside, watching children in a play area to make sure a guardian was present. She was standing among the children when she heard the screeching of tires, causing her to turn and look at a gray SUV. The front-seat passenger and a rear-seat passenger were sitting on the window ledges of their doors, with their torsos outside of the open windows of the SUV and their legs inside. Laughing loudly, these two passengers pointed firearms at her and the children.

¶ 14    In a bush at the apartment complex, the police found a firearm. J.W. and a codefendant said they saw someone throw the firearm into the bush.

¶ 15    Defense counsel argued that, despite the foregoing evidence, the circuit court should grant pretrial release for the following reasons. While conceding that aggravated unlawful use of a weapon was a detention-eligible offense, defense counsel maintained that the State had failed to prove, by clear and convincing evidence, that defendant committed the offense. In any event, defendant was young. He was a 20-year-old living with his mother and two siblings in a closely knit family. He was not a violent person, according to defense counsel. This was his first significant criminal incident. He had a seizure disorder, for which he had upcoming medical appointments. After assigning to defendant a new criminal activity score of 3 out of 6, the McLean County public safety assessment report recommended pretrial release with conditions. Defense counsel seconded that recommendation. He suggested that if defendant were put on home

confinement with electronic monitoring and supervision by his mother, and if he were banned from possessing firearms, these conditions would suffice as alternatives to pretrial detention.

¶ 16 The circuit court noted that, evidently, defendant had access to firearms and ammunition. The court did not see how home confinement would prevent him from acquiring more of the same. Even if defendant complied with home confinement, someone could simply bring a firearm to his home. Electronic monitoring would be ineffectual, in the court's view, because defendant lived outside McLean County, and the resulting delay in notification would allow him to "knowingly leave and go undetected for a considerable amount of time," endangering the community. Finding that the community was immediately threatened by defendant's conduct, the court concluded that conditions less restrictive than pretrial detention would not mitigate the danger that defendant would use weapons to commit further crimes. Therefore, the court granted the State's petition for the denial of pretrial release.

¶ 17 In his notice of appeal, defendant checked three boxes: (1) the State failed to prove he posed a threat to the community, (2) even if the State proved such a threat, the State failed to prove that no pretrial release conditions would mitigate the threat, and (3) the circuit court erred by finding that no release conditions would reasonably ensure defendant's appearance at later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 18                                    II. ANALYSIS

¶ 19 Defendant has not filed a memorandum. Therefore, we evaluate the arguments he makes in his notice of appeal. We eliminate the third argument as inapposite. "[T]hat no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class

A misdemeanor" (725 ILCS 5/110-6(a) (West 2022)) would be relevant to the *revocation* of pretrial release, not to the *denial* of pretrial release.

¶ 20    So, we take up the remaining two arguments in the notice of appeal. The first argument is that section 110-6.1(e)(2) of the Code is unproven. According to defendant, the State failed to prove, by clear and convincing evidence, that

> "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, or abuse as defined by paragraph (1) of Section 103 of the Illinois Domestic Violence Act of 1986 [(750 ILCS 60/103 (West 2022))]." *Id.* § 110-6.1(e)(2).

In further explanation, defendant writes in his notice of appeal:

> "There was not proof by clear and convincing evidence that [defendant] poses a real and present threat to the safety of any person or person [*sic*] or the community. Further, according the [*sic*] the McLean County Public Assessment Report, the alleged offense was non-violent, and [defendant] has no violent offense 20 years old or younger, no pending charge at the time of the offense, no prior felony conviction, and no prior violent conviction. The Court was initially confused by the facts presented in this case despite finding at the end of the hearing that it made no difference to the ruling. Mother, Lakesha Price, also present in Court for support and show of community presence to prevent any potential real and present threat from [defendant]. No evidence presented showing [defendant] violent."

¶ 21    Under subsection (e)(2) of section 110-6.1 of the Code, the finding of a "real and present threat" must be "based on the specific articulable facts of the case," and those "facts" must center on "conduct." *Id.* Subsection (e)(2) gives nonexhaustive examples of such "conduct," and "intimidation" is one of the examples. *Id.*

¶ 22    Insomuch as words in a statute are not specially defined, we give those words their ordinary, popularly understood meaning, which can be found in a dictionary. See *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 15 (1991). The Code does not appear to specially define "intimidation." See 725 ILCS 5/102-1 to 102-23 (West 2022). Therefore, we give the word its dictionary meaning. See *Datacom*, 146 Ill. 2d at 15. To "intimidate" means "to make timid or fearful" or to "FRIGHTEN," "esp[ecially]: to compel or deter by or as if by threats." Merriam-Webster's Collegiate Dictionary at 656 (11th ed. 2020). The modifier "especially" signifies that although compulsion often is an incident of "intimidation," compulsion is not essential to "intimidation." Rather, the essential meaning of "intimidation" is the infliction of fear. The synonym of "intimidate" is "frighten."

¶ 23    One can frighten a person by verbally threatening to shoot the person. One can even more convincingly frighten a person—and anyone within gunshot range—by shooting at the person. Being shot at is an intimidating experience. Defendant's admitted participation in the shooting in Champaign (according to the State's proffer) was an act of "intimidation" within the meaning of section 110-6.1(e)(2). Arguably, by that act alone, defendant provided a "specific articulable fact[ ]" to support a finding that he "poses a real and present threat to the safety of any person or persons or the community." 720 ILCS 5/110-6.1(e)(2) (West 2022).

¶ 24    We say "arguably" because in subsection (g) of section 110-6.1 (*id.* § 110-6.1(g)), there are additional factors that might be relevant to the question of dangerousness. According to

subsection (g), though, the circuit court "may" consider these additional factors (*id.*), as if to suggest that the court does not have to do so. "[T]he word 'may' ordinarily connotes discretion" rather than a duty. See *Krautsack v. Anderson*, 223 Ill. 2d 541, 554 (2006). So, it is not that subsection (g) must overcome subsection (e)(2).

¶ 25    Defendant points out a factor in subsection (g) that tends to favor him: his lack of a "prior criminal history indicative of violent, abusive or assaultive behavior." *Id.* § 110-6.1(g)(2)(A). This factor, however, is not determinative (see *People v. Romine*, 2024 IL App (4th) 240321, ¶ 20), and other factors in subsection (g) could be regarded as less favorable. Subsections (g)(7) and (9) read as follows:

> "(7) Whether the defendant is known to possess or have access to any weapon or weapons.
>
> \*\*\*
>
> (9) Any other factors, including those listed in Section 110-5 of this Article [(*id.* § 110-5)] deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g)(7), (9).

In the language of subsection (g)(7), defendant and his acquaintances have "access to any weapon or weapons." *Id.* § 110-6.1(g)(7). Three occupants of the Hyundai had pistols. As for subsection (g)(9), one of the factors in section 110-5 is "the defendant's character." *Id.* § 110-5(a)(3)(A). Arguably, judging from the State's proffer, defendant's character includes a "propensity \*\*\* for violent, abusive, or assaultive behavior." *Id.* § 110-6.1(g)(9). After participating in a shootout in Champaign, defendant and his companions headed to 710 Orlando Avenue with the apparent intention of attacking or menacing a resident of that apartment complex. With defendant driving

the stolen Hyundai, two of his passengers amused themselves by pointing their pistols at an innocent woman and the children she was supervising. Even though, this time, it was not defendant pointing a pistol, he was the driver on this violent errand, and under such circumstances, it does not seem unreasonable to characterize him by his coconspirators.

¶ 26 Reasonableness is all we require in a pretrial detention decision. In other words, we look for an abuse of discretion. See *People v. Pennington*, 2024 IL App (4th) 240585-U, ¶ 9. "An abuse of discretion occurs where a court's decision is arbitrary, fanciful or unreasonable, or where no reasonable person would agree with the position adopted by the trial court." (Internal quotation marks omitted.) *Id.* For the reasons we have explained, the circuit court's finding of dangerousness under section 110-6.1(e)(2) is within the range of reasonableness.

¶ 27 The remaining argument in defendant's notice of appeal is that the State failed to prove section 110-6.1(e)(3), specifically, that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article [(725 ILCS 5/110-10(b) (West 2022))] can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3). In his notice of appeal, defendant claims:

> "Both mandatory conditions as well as discretionary conditions of monitored home confinement in [defendant's] home with his mother and siblings would have been sufficient to mitigate any potential threat to the safety of any person or persons or the community. Said conditions would also have allowed [defendant] to keep crucial health-related appointments, including a scheduled doctor's appointment for his seizure condition, and a counseling appointment with a therapist along with ensuring that he would receive his seizure medication.

> [Defendant] would have no access to firearms if the Court had ordered him to home confinement and no opportunity for contact with other alleged offenders. [Defendant] is only 20 years old with no significant prior criminal history and no violent offenses."

¶ 28   In that quoted passage, defendant makes assertions, not all of which would have to be credited. After all, he was living with his mother and siblings when, according to the State's proffer, he committed the charged offenses. It is unclear why living with them would have a restraining effect in the future if living with them had no restraining effect in the recent past. Also, defendant represents that he "would have no access to firearms if the Court had ordered him to home confinement and no opportunity for contact with other alleged offenders." That representation could be rejected as unsubstantiated and, in this age of hyperconnectivity, implausible. Finally, being "only 20 years old" is not necessarily a favorable consideration if a feature of defendant's young adulthood is immaturity that brooks no restraint. If, in an investigative stop, defendant could be compelled to obey a police officer only by having a pistol pointed at him and being pulled to the ground, a reasonable decision maker in McLean County could lack confidence that defendant would comply with pretrial release conditions 50 miles away, in Champaign County. The denial of pretrial release, therefore, is not an abuse of discretion. See *Pennington*, 2024 IL App (4th) 240585-U, ¶ 9.

¶ 29                              III. CONCLUSION

¶ 30   For the foregoing reasons, we affirm the circuit court's judgment.

¶ 31   Affirmed.